STATE OF NORTH CAROLINA v. PEARL JEAN McNEIL PORTER

No. 8310SC132

(Filed 15 November 1983)

1. **Searches and Seizures § 10— search at airport—no seizure of defendant—reasonable suspicion defendant engaged in criminal activity**

   In a prosecution for trafficking in heroin, the trial court properly found defendant was not unconstitutionally seized by law enforcement officers at an airport where the evidence tended to show that defendant was approached by two or at most three law enforcement officers; she knew two of the officers and they did not use a threatening tone of voice or display a weapon; defendant consented to a search of her purse because she thought she had nothing to lose and had forgotten about hashish in her purse. Further, even if defendant was seized the agents clearly had a reasonable suspicion that defendant was engaged in criminal activity where the evidence tended to show that prior to defendant's arrest, an agent had received evidence from a reliable informant that defendant and/or her husband were bringing drugs into the airport from New York on Thursdays and Fridays; that defendant disembarked from a plane originating in New York on a Thursday; that before approaching defendant, the agent had learned that defendant was not listed on the passenger list for the flight and could conclude from this that she was traveling under an assumed name; and that she did not have a plane ticket with her and appeared to have no luggage.

2. **Searches and Seizures § 10— warrantless seizure of suitcase—probable cause existing**

   In a prosecution for trafficking in heroin, an agent had probable cause to seize a brown leather suitcase from an Eastern Airlines unclaimed baggage area after hashish was discovered in defendant's purse where the agent had received reliable information that defendant was bringing drugs into the airport from New York on Thursdays and Fridays; hashish was found in defendant's purse after her voluntary consent to the search; defendant was traveling under an assumed name; the suitcase was tagged with the name Barbara Williams; and a passenger with the same name was listed on a passenger list as having cancelled an earlier New York flight and as having arrived on the later flight which was indicative of what defendant had done since her husband had been seen waiting for her at an earlier flight.

3. **Criminal Law § 80.1— computer reservation printout—properly admitted into evidence**

   In a prosecution for trafficking in heroin, the trial court properly admitted into evidence an Eastern Airline's reservation computer printout for two flights arriving from New York City on 21 January 1982 where an employee from Eastern testified that he worked with the computer system, that the system is part of Eastern's business management service and that the information retained in the system is prepared in the regular course of business.

**4. Criminal Law § 60.5— fingerprint evidence—proper foundation laid**

　　A proper foundation was laid for an expert in latent fingerprint identification to testify that fingerprints lifted from a suitcase matched those of an identification card bearing defendant's name where a witness testified that he fingerprinted defendant when she was arrested on the drug charges; and that the fingerprint card bears defendant's print and was forwarded to the SBI.

**5. Narcotics § 4— trafficking in heroin—sufficiency of evidence**

　　In a prosecution for trafficking in heroin, the trial court properly failed to dismiss the charge where the evidence tended to show that defendant was traveling under an assumed name; that she did not have any luggage; that the suitcase with heroin was tagged with the name "Barbara Williams"; that a passenger with this name had cancelled a reservation on the afternoon New York flight and arrived on the evening flight; that "Barbara Williams" was paged but no one claimed the suitcase; that defendant's fingerprints were lifted from the unclaimed suitcase; that defendant's fingerprints were found on some of the contents of the suitcase and that one of the officers recognized the nightgown in the suitcase as identical to one he had seen on defendant prior to 21 January 1982.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 24 September 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 18 October 1983.

On the evening of 21 January 1982 defendant was questioned by law enforcement officers at Raleigh-Durham Airport. After conferring with defendant, the officers searched her purse and a suitcase identified as belonging to defendant. As a result of these searches defendant was charged with misdemeanor possession of hashish and trafficking in heroin. She pleaded guilty to the misdemeanor and was fined $100. A jury found defendant guilty of trafficking in heroin, and the trial court sentenced her to 18 years.

*Attorney General Edmisten, by Special Deputy Attorney General Lester V. Chalmers, Jr., for the State.*

*Loflin & Loflin, by Thomas F. Loflin, III and Robert S. Mahler for defendant appellant.*

ARNOLD, Judge.

The first question before this Court is whether the trial court erred in denying defendant's pretrial motions to suppress the hashish found in defendant's purse, the heroin found in the suitcase and all statements made by defendant after the law enforcement officers approached her. Defendant further questions the

admission of certain evidence at trial, the sufficiency of the evidence to support her conviction and the constitutionality of the sentencing provisions in G.S. 90-95. After careful consideration of these assignments of error, we conclude that defendant received a fair trial free from prejudicial error.

Prior to trial, defendant moved to suppress evidence of the hashish as well as the heroin found in the suitcase on the grounds that both her purse and suitcase were illegally searched and seized. After conducting an evidentiary hearing on these matters, the trial court made detailed findings of fact and concluded that the controlled substances were admissible into evidence.

[1] Defendant first argues that she was unconstitutionally seized by law enforcement officers at the door of the airport terminal; that her acquiescence to SBI Agent Turbeville's request to search her purse was coerced by her illegal seizure and that the hashish seized from her purse was tainted by this illegal seizure and that the trial court therefore erred in declaring the hashish admissible evidence.

This Court's scope of review of an order denying motions to suppress evidence is "whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E. 2d 618, 619 (1982). We conclude that the trial judge here made findings of fact amply supported by the evidence; and that these findings of fact support admission of the seized contraband.

These findings of fact are summarized below:

Terry Turbeville has been a drug agent for 7 years and has worked at the Raleigh-Durham Airport (hereinafter Airport) with the Drug Interdiction Unit since October 1981. During the first part of January 1982, Turbeville received information from Det. Jimmy Privette of the Raleigh Police Department that defendant and/or her husband, Elbert Porter, were bringing heroin into the Airport from New York City. Det. Privette indicated that the couple was transporting the drugs on their person or in their luggage; and that they usually traveled during the latter part of the week. He pro-

vided Turbeville with photographs of several persons, including the defendant. Also during the first part of January 1982, Turbeville met with a confidential informant. He asked the informant if he knew or had heard anything about narcotics coming through the Airport. The informant said, "You know about Pearl and Elbert?" Turbeville replied that he did not. The informant then continued, "You know they've been bringing it through Raleigh-Durham and usually come back on Thursday and Friday." This informant had always given Turbeville reliable information. In fact, he had given Turbeville information regarding drugs and seizures of drugs 3 or 4 times.

On 21 January 1982 Turbeville was working at the Airport. While waiting at the Eastern Airlines gate for a 4:00 p.m. flight from New York, Turbeville spotted Elbert Porter and another man. The two men appeared to be waiting for someone, but no one met them when the plane arrived. After checking at the Eastern ticket counter, the two men left.

Sometime after 4:00 p.m. Turbeville called Det. Privette and informed him that Elbert had been at the Airport and appeared to be waiting for someone. He told Privette that the next scheduled flight from New York was 9:00 p.m. and requested police assistance for this flight.

By 8:30 p.m. 7 law enforcement officers were awaiting the arrival of the 9:00 p.m. flight. When the plane landed, defendant disembarked and entered the lobby of the terminal. She was carrying a purse and box. As the defendant passed through the main lobby she handed the box to the gentleman who had accompanied Elbert to the Airport. No words were exchanged. As defendant neared the exit of the lobby, the man returned the box to her and headed toward the baggage area. Sgt. Peoples of the Raleigh Police Department then approached defendant identified himself and said, "How are you doing Pearl?" Turbeville approached defendant from behind, introduced himself and showed defendant his SBI credentials. Turbeville then asked defendant for her plane ticket. She responded that she must have left it on the plane. At this time people were gathering around and going in and out of the lobby. Turbeville asked defendant if she

would like to go to his office and continue looking for identification. Defendant said okay. Before the 9:00 p.m. flight Turbeville had checked with Eastern Airlines and had discovered that defendant's name was on neither passenger list for the flights originating in New York.

When defendant reached Turbeville's office, Turbeville informed her that he was conducting a narcotics investigation and would like her cooperation. He then asked if he could look into her purse. Defendant said yes and handed the purse to him. Turbeville asked defendant if she had check-on luggage and she replied that she did not. Turbeville discovered a tinfoil packet in defendant's purse. He opened the packet, showed it to Det. Liggins and asked, "What's this?" Defendant replied, "That is 'Hash!' I forgot that it was in there."

While in the office Turbeville was informed by an officer that a suitcase tagged "Barbara Williams" had been left on the baggage platform. Turbeville had previously learned that a Barbara Williams was listed as a passenger who missed the 4:00 p.m. flight and as a passenger on the 9:00 p.m. flight. Turbeville had Barbara Williams paged and no one responded. He also checked the telephone book and called a Barbara Williams listed therein. This person indicated she had no luggage at the Airport. Turbeville showed defendant this suitcase and she denied that it was hers. Defendant was then arrested for possession of hashish. She indicated she wanted a lawyer and no further questions were asked. Defendant was taken before a magistrate. After a warrant for the misdemeanor was issued, defendant was released on bond.

At 2:04 a.m. on 22 January 1982, Turbeville and Det. O'Shields obtained a search warrant to search the suitcase. Plastic bags containing 27.9 grams of heroin were found inside.

At no time was defendant given the *Miranda* warnings. Turbeville testified that he would not have let defendant leave the Airport after he stopped her at the exit door. No one told defendant she had a right to leave without conferring with the officers. None of the officers present at the Airport were wearing uniforms and no weapons were ever

displayed. Defendant testified that she knew 2 of the officers; that she did not believe she was free to leave and that she forgot she had hashish in her purse.

Based upon these findings of fact the trial court concluded:

10. Agent Turbeville, at the time of the defendant disembarking from New York Kennedy flight on Eastern Airlines at 9:00 p.m. had a reasonable suspicion of criminal activity that involved illicit drugs arriving at the Raleigh-Durham Airport with someone connected with Elbert Porter; that Pearl Porter, wife of Elbert Porter, could probably be one of the persons engaged in the criminal activity based on information given the agent by the confidential informant and Detective Privette; that Agent Turbeville made a legitimate, temporary, detention of the defendant in the process of accosting her in the lobby of the airport terminal and subsequently asking her if she would go to the office; that the defendant readily went with the officers to the office, forty feet away, in a spirit of voluntary cooperation, she believing that as of that time she had nothing to lose, or fear; that the consent to the search of the pocketbook was in the same spirit of voluntary cooperation, she believing at the time that she had nothing to fear or lose. There is exceptionally clear evidence of consent.

. . . .

12. All the believable testimony, and the totality of all the circumstances, point to the one conclusion that Agent Turbeville had probable cause to believe that the defendant was trafficking in some form of illicit narcotic drugs, controlled substances. He had a reasonable suspicion, based on articulable and objective facts, that Pearl Porter was involved in criminal activity.

The judge further concluded:

The defendant consented to the search of her pocketbook because she thought she had nothing to lose. She had a genuine momentary lapse of memory that she still had any hash in her purse. It was the heroin she was worried about, and none of it was on her person, or checked as luggage in her

name, nor within her reach or grasp, as she was accosted in the lobby, and while she was inside the office with the officers.

The findings of fact show and the trial judge properly concluded that defendant's first encounter with the officers at the Airport was an investigative stop and not a seizure. In *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968), the United States Supreme Court established that a reasonable investigative stop did not offend the Fourth Amendment. In a recent airport search and seizure case, the Court concluded that federal agents' conduct in initially approaching the respondent and asking to see her ticket and identification was a permissible investigative stop under the standards of *Terry*. *U.S. v. Mendenhall*, 446 U.S. 544, 64 L.Ed. 2d 497, 100 S.Ct. 1870 (1980). The facts and language in this case are pertinent to our determination of the case on appeal.

In *Mendenhall*, agents observed a woman whose conduct appeared to be characteristic of persons unlawfully carrying narcotics. The agents approached her, identified themselves as federal agents and asked to see identification and an airline ticket. The agents noted a discrepancy between the names on her driver's license and ticket. They returned the items to her and asked if she would accompany them to their office. She agreed. She also consented to a search of her purse after the agents told her she had a right to decline the search. Mendenhall later consented to a search of her person. Drugs were discovered in her underclothing. The Court concluded that on these facts no "seizure" occurred. The Court noted:

> The events took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent's identification and ticket. Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest. The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement

official (citations omitted). In short, nothing in the record suggests that the respondent had any objective reason to believe that she was not free to end the conversation in the concourse and proceed on her way, and for that reason we conclude that the agents' initial approach to her was not a seizure.

*Id.* at 510. The Court concluded "that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 509.

In the case on appeal, defendant was approached by two or at the most three law enforcement officers. She knew two of the officers and they did not use a threatening tone of voice or display a weapon. The evidence further showed, and the trial court found, that defendant consented to the search of her purse because she thought she had nothing to lose. She simply forgot about the hashish in her purse.

We note that the trial court concluded that even if defendant was seized at the Airport, her seizure was not unlawful. Any seizure must at least be supported by reasonable and articulable suspicion that the person seized is engaged in criminal activity. *Reid v. Georgia,* 448 U.S. 438, 65 L.Ed. 2d 890, 100 S.Ct. 2752 (1980). The evidence shows that Agent Turbeville clearly had a reasonable suspicion that defendant was engaged in criminal activity.

Several weeks prior to defendant's arrest, Turbeville had received evidence from a reliable informant that defendant and/or her husband were bringing drugs into the Airport from New York on Thursdays or Fridays. As predicted by this informant, defendant disembarked from a plane originating in New York on a Thursday. Before approaching defendant, Turbeville had learned that defendant was not listed on the passenger list for the flight and could conclude from this that she was traveling under an assumed name. She did not have a plane ticket with her and appeared to have no luggage. Since defendant voluntarily consented to the search of her purse while being justifiably detained on reasonable suspicion, the hashish recovered in the search is admissible against her.

[2] Defendant next argues that the warrantless seizure of the brown leather fold-up suitcase tagged with the name Barbara Williams was unconstitutional. The suitcase was seized from Eastern Airlines' unclaimed baggage area after hashish was discovered in defendant's purse.

In a recent decision, the U.S. Supreme Court held that *Terry* principles could be applied to justify a warrantless seizure of baggage on less than probable cause. *U.S. v. Place,* --- U.S. ---, 77 L.Ed. 2d 110, 103 S.Ct. 2637 (1983). Place was stopped by law enforcement officers because of his suspicious behavior. After he refused to consent to a search of his luggage, the agents informed him that they were taking the suitcase to a federal judge to obtain a search warrant. The agents instead transported the suitcase from New York's LaGuardia Airport to Kennedy Airport where a "sniff test" by a narcotics detection dog proved positive. Ninety minutes had elapsed since the seizure of the luggage. The Court held that the drugs obtained from the subsequent search of the luggage was inadmissible because of the length of detention of Place's luggage.

Unlike the facts in *Place,* Agent Turbeville had probable cause to seize the brown leather suitcase pending issuance of a search warrant to examine its contents. The information received from the reliable informant, the hashish found in defendant's purse after her voluntary consent, the evidence that defendant was traveling under an assumed name, the evidence that the suitcase was tagged with the name Barbara Williams, and the evidence that a passenger with the same name was listed on the passenger lists as having cancelled the earlier New York flight and arriving on the later flight clearly gave the officers probable cause to seize the suitcase.

The trial judge concluded that since defendant denied that the luggage was hers, she had no standing to object to the search of her suitcase following its seizure. Defendant excepts to this conclusion. Because the search was conducted pursuant to a properly issued search warrant the conclusion that defendant had no standing to object to the search is not material to the court's decision to deny suppression of evidence seized from the search.

[3] Defendant argues that the trial court erred in admitting into evidence Eastern's reservation computer printout for the two

flights arriving from New York City on 21 January 1982. She bases this assignment of error on the State's failure to lay a proper foundation. We find no support for this argument.

Robert Taylor, an employee with Eastern, testified that he works with the computer system; that the system is part of Eastern's business management service and that the information retained in the system is prepared in the regular course of business. After briefly explaining how information is placed in the computer, Taylor testified that Agent Turbeville approached him on 21 January 1982 and requested information on the two Eastern flights from New York arriving that day. Taylor made a printout of the two passenger lists showing reservations and cancellations. At trial Roberts identified copies of these printouts he had made for Turbeville. The State, through Taylor's testimony, laid a proper foundation for the introduction of the computer printouts. *See State v. Springer*, 283 N.C. 627, 197 S.E. 2d 530 (1973).

[4] Defendant's argument that the State failed to lay a proper foundation for the admission of fingerprint evidence is also without merit. Agent Neuner, an expert in latent fingerprint identification, testified that on 22 January 1982 he examined the suitcase and its contents for fingerprints. He compared the fingerprints lifted from these items with a fingerprint identification card bearing defendant's name and found that some of the latent fingerprints matched those on the card.

Defendant specifically argues that no foundation was laid for this testimony, because no witness identified defendant as the person who made the inked impression on the fingerprint card. Defendant has obviously overlooked the testimony of an employee of the City-County Identification Unit. This witness testified that he fingerprinted defendant when she was arrested on the drug charges; and that the fingerprint card bears defendant's print and was forwarded to the SBI.

[5] Defendant has assigned error to the trial court's failure to dismiss the charge of trafficking in heroin. She contends that the fingerprint evidence was unsubstantial; and that Eastern Airlines had sole and exclusive possession of the suitcase containing the heroin.

When considering a motion to dismiss for insufficient evidence, the court must consider all the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference to be drawn from the evidence. The evidence, when viewed in this light, shows that defendant was traveling under an assumed name; that she denied having any luggage; that the suitcase was tagged with the name "Barbara Williams"; that a passenger with this name had cancelled her reservation on the afternoon New York flight and arrived on the evening flight; that "Barbara Williams" was paged but no one claimed the suitcase; that defendant's fingerprints were lifted from the unclaimed suitcase; that defendant's fingerprints were found on some of the contents of the suitcase and that one of the officers recognized a nightgown in the suitcase as identical to one he had seen on defendant prior to 21 January 1982. We find no error in the failure to grant defendant's motion.

In defendant's final assignment of error, she attacks the constitutionality of G.S. 90-95(h)(4), (5) and (6). This same argument was posed by defendant's attorney in *State v. Willis*, 61 N.C. App. 23, 300 S.E. 2d 420 (1983), wherein this court concluded that these statutes are not violative of the United States or North Carolina Constitutions.

No error.

Judges WEBB and HILL concur.