State v. Moore

Affirmed.

Judges WHICHARD and JOHNSON concur.

STATE OF NORTH CAROLINA v. MELVIN CECIL MOORE AND BILLY DEAN
TRANSEAU

No. 8523SC871

(Filed 18 March 1986)

1. **Searches and Seizures § 23— search warrant—probable cause—marijuana field —people exiting house near field**

   An affidavit of a detective in the sheriff's department was sufficient to support a finding of probable cause to support issuance of a search warrant where the affidavit showed that the officer had been to an area of Wilkes County and observed a field of growing marijuana and people coming out of a house near the field, and the magistrate had a substantial basis for concluding there was a fair probability that marijuana was in the house and that the house near the marijuana field was related to the field.

2. **Searches and Seizures § 44— motion to suppress evidence—failure to make findings of fact**

   The trial court did not err in failing to make findings of fact before denying defendants' motions to suppress evidence seized from a house in rural Wilkes County pursuant to a search warrant since there was no conflict of evidence between the affiant's statements in his affidavit and testimony at trial.

3. **Criminal Law § 75.7— officers' questions to defendants—no warning of constitutional rights—answers admissible**

   There was no merit to defendants' contentions that statements made by them to law officers should have been suppressed since they had not been warned of their constitutional rights and they had been unlawfully arrested where the officers had a map which showed a marijuana field close by and the map was in all other respects accurate; the house from which the officers had reason to believe the defendants had just left was as shown on the map; the officers had the right to detain defendants while one officer checked to see if the marijuana field was where the map indicated it would be; and officers could ask defendants questions concerning their identity and their business in the area.

4. **Criminal Law § 119— fingerprint evidence—request for instructions substantially complied with**

   The trial court's instructions substantially complied with defendants' requested instructions that, as to each defendant, his silence was not to be con-

strued as evidence that his fingerprints could only have been impressed at the time the crime was committed and that neither of them had to explain the presence of his fingerprints.

**5. Criminal Law § 113.7— acting in concert—instructions proper**

   In a prosecution of defendants for manufacturing and trafficking in marijuana by possessing more than 100 but less than 2,000 pounds, defendants were not prejudiced by the trial court's instruction that if the jury found that either of the defendants was in close proximity to the marijuana that would be a circumstance together with other circumstances from which the jury could infer that defendants were aware of the presence of marijuana and had the power and intent to control its disposition or use, since there was no objection to this portion of the charge; the other circumstances to be considered by the jury were amply stated in other parts of the charge; and in the instructions on acting in concert the court properly explained how the jury should consider evidence that one of the defendants was in proximity to the marijuana.

**6. Narcotics § 4.3— constructive possession of marijuana—sufficiency of evidence**

   In a prosecution of defendants for manufacturing and trafficking in marijuana, evidence was sufficient to show that defendants had constructive possession of marijuana where it tended to show that both defendants were found at a house in which a substantial amount of marijuana was found; their fingerprints were found on items within the house; one defendant had in his possession a key which fit a gate across the road to the house and the door to the house; one defendant's truck was present on the premises and the truck contained twine identical to the twine used to tie marijuana plants to stakes in a field near the house and to twine found within the house; and the other defendant admitted that he looked after the place.

**7. Criminal Law § 113.7— acting in concert—instruction proper**

   There was no merit to the contention of one defendant that the evidence at most showed that he was present at a house where a substantial amount of marijuana was found but that there was no evidence that he was present when the other defendant did some act which constituted the crime and that the trial court therefore erred in instructing on acting in concert, since there was evidence that both defendants were in the house in which there was a large quantity of marijuana and the jury could conclude from this that the two defendants acted together to possess the marijuana.

   Judge PARKER concurring in the result.

APPEAL by defendants from *Wood, Judge*. Judgment entered 11 February 1985 in Superior Court, WILKES County. Heard in the Court of Appeals 10 February 1986.

The defendants were charged with trafficking in marijuana by possessing more than 100 pounds but less than 2,000 pounds and by manufacturing more than 100 pounds but less than 2,000 pounds. Each of the defendants moved to suppress evidence on

the ground that it was seized pursuant to an invalid search warrant. These motions were denied on the ground that the affidavit upon which the warrant was issued was proper on its face. The defendants then made motions to suppress the evidence on the ground that the supporting affidavit upon which the search warrant was based contained statements which were false.

A hearing on this motion was held prior to the trial. The evidence at this hearing showed that an unnamed informant gave a map to Reggie Blackburn, the Wilkes County Jailer, with instructions to give the map to Detective David Call or the Sheriff of Wilkes County. The map passed through several hands at the Sheriff's Department and was delivered to David Call. Mr. Call talked to the jailer who described the man who had delivered the map to him. From this description Mr. Call concluded the person was an informant who had previously furnished him with reliable information as to the location of a marijuana field. The map was a drawing of Brushy Mountain in Wilkes County which showed the location of a marijuana field.

On 8 November 1983 Mr. Call, accompanied by another deputy with the Wilkes County Sheriff's Department, went to the location described by the map. There was a logging road as shown on the map. They drove down the logging road approximately 50 feet to a locked steel cable which was shown on the map. They left their vehicle, crossed the cable, and continued down the logging road for approximately 500 feet. They observed tire tracks periodically as they continued. They encountered a locked aluminum gate across the road as the map indicated. After going around the gate and continuing some 300 to 400 feet, they located a four wheel drive truck, later identified to be owned by defendant Moore. Detective Call looked into the vehicle through its window and observed nothing unusual.

The officers decided to wait to see if anyone would return to the vehicle. From the officers' position they could observe both the vehicle and a two story white frame house, indicated on the map, which was 500 yards from their position. The map did not indicate that marijuana could be located in the house. The officers remained in that position some 20 to 30 minutes and heard noises coming from inside the house. They relocated within 250 to 300 yards of the house. The noises within the house sounded to Detec-

tive Call as if someone were throwing heavy objects onto a floor. After remaining in that position for some 20 to 30 minutes, the officers heard a loud slamming bang as if a screen door had shut. They immediately observed the two defendants on the back porch of the house. The officers lost sight of the defendants when they walked toward a barn near the house. The officers returned to a location near the truck. After some 20 to 30 minutes, the defendants reappeared walking toward the truck.

At that time the officers identified themselves and asked for identification from both defendants. Defendant Moore gave his driver's license and defendant Transeau gave either his driver's license or social security card to Detective Call. Detective Call then asked both defendants what they were doing there. Defendant Moore indicated that they were cutting wood. Moore then repeated that they were cutting wood or looking at timber. Call then asked what the defendants were doing in the house. Defendants denied being in the house except that Transeau indicated he had been in the house when he was a boy. Call then asked about the keys to the gates. Neither defendant answered the question. Call then asked who owned the property. Transeau indicated, among other things, that it was the old Busic place and "he sometimes looked after it."

The officers patted down the defendants either at the vehicle or after they all four walked down to the house and the officers obtained a pocketknife from Moore. Moore then asked what he was being held for and whether they were under arrest. Call informed the defendants that they had received information that a large marijuana field was located on the property and that they were investigating the possibility that defendants had broken into the house. At that time Call advised them of their *Miranda* rights. Call admits that the defendants had not previously been informed of their rights and that the defendants were never free to leave after they encountered them at the vehicle.

Detective Call left the defendants with Officer Summers so that he could see if marijuana was located where the map indicated. He took the winding logging road, which left the grassy area around the house, some 1,400 feet, approximately 1,000 feet from the house by a straight line, where he encountered a well-cultivated garden of marijuana plants in the road. The field was

not visible from the house or vice versa. He then returned to where he had left Summers and the defendants. He was unable to gain entrance into the front door of the house because it was locked and was unable to see into the house because the windows were covered over from within. The four went to the back of the house where the officers had observed the defendants previously. Call observed a screen door on the porch and a locked wooden door. Call asked for and obtained a key from Moore which unlocked the padlock. The key also unlocked the two padlocks on the cable and aluminum gate. After observing that the key unlocked the padlock Call locked it back.

The officers then called for assistance. Before help arrived, the four walked to the truck. Call searched the vehicle after gaining consent to do so by Moore. He observed, among other things, twine which was identical to that used to stake up the marijuana plants outside and later found inside the house. The officers transported the defendants to the Wilkes County Sheriff's Department after another officer arrived and stood sentry at the house.

Detective Call and Detective Nick Nixon prepared an affidavit for a search warrant for the house that same evening. Detective Call signed it prior to going to the magistrate. Call did not remember specific questions asked by the magistrate. The magistrate granted the warrant. The application contains the following sworn statement:

Affiant has recieved [sic] information within the past 24 hrs from a confidental [sic] source that has given information in the past that has proven to be true and reliable that said confidental [sic] source has seen a quanity [sic] of marijuana growing in a wooded area at the above described location within the past 72 hars [sic] and that said confidental [sic] source has drawn a map describing the above described location and Affiant has been to the above described location and found it to be as described in the map. Affiant has recieved [sic] other information from other sources describing the above described location and that marijuana was growing there. Affiant has observed subjects in the and comming [sic] out of the above described residence near the marijuana

field. Affiant has also seen the above described marijuana. [sic] on 11-8-83.

Detective Call returned with other officers to the house and searched the premises. They located a large quantity of marijuana, a chain saw, and various other items. Defendant Moore's fingerprints were found in the house on a cracker box and on a plastic bag containing marijuana. Defendant Transeau's fingerprints were found in the house on a bottle and on a plastic bag containing marijuana.

The court overruled the motions to suppress the evidence obtained in the search. The jury found each defendant not guilty of trafficking by manufacturing and guilty of trafficking by possession of marijuana. Defendant Moore was sentenced to twelve years in prison and defendant Transeau to seven years in prison. Each defendant was fined $25,000.00. The defendants appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General David S. Crump, for the State.*

*Dennis R. Joyce for defendant appellant Melvin Cecil Moore.*

*Brewer & Freeman, by Paul W. Freeman, Jr. for defendant appellant Billy Dean Transeau.*

WEBB, Judge.

[1]   Each of the defendants assigns error to the denial of his motions to suppress evidence seized pursuant to a search of the house. Each of the defendants made two motions to suppress. At a hearing on their first motions the court considered only the application for the search warrant in determining whether there was probable cause to issue the warrant. The appellants contend the affidavit of Mr. Call was not sufficient to support a finding of probable cause. The United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983) held that in issuing a search warrant:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying

hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed. 2d at 548.

In this case the affidavit shows that the officer had been to an area of Wilkes County and observed a field of growing marijuana. He stated he had observed persons coming out of a house near the field. We believe that the magistrate had a substantial basis for concluding there was a fair probability that marijuana was in the house.

The appellants argue that the affidavit does not contain any information from which anyone could reasonably relate the dwelling to be searched to the field of marijuana. We believe that the magistrate could conclude there is a fair probability that a house near a marijuana field in rural Wilkes County is related to the field. We hold that the court did not err in finding the application was sufficient for the magistrate to find there was a fair probability that marijuana was in the house.

[2] The appellants also contend in their first assignment of error that the court erred in not allowing their second motions to suppress. Evidence was received in the form of testimony from Mr. Call at the hearing on the defendants' second motions to suppress. The court did not make findings of fact but denied each defendant's motion. The defendants argue it was error for the court not to make findings of fact. Our Supreme Court has held it is not reversible error to fail to make findings of fact before admitting evidence after a hearing on a motion to suppress if there is not a material conflict in the evidence on voir dire. *State v. Phillips*, 300 N.C. 678, 268 S.E. 2d 452 (1980). The appellants argue that there was a conflict in the evidence in this case because Mr. Call's testimony differed from the statements in his affidavit. For this reason they say it was error for the court not to find facts. We do not believe there was a conflict between the affidavit and Mr. Call's testimony. Mr. Call supplied in more detail in his testimony the facts which he set forth in the affidavit. He testified that the marijuana was 1,410 feet from the house. We do not believe this is inconsistent with his characterization of the house

as "near" the field in the affidavit. He testified he did not see the people come in or out of the house. He heard a door slam and then saw the defendants on the back porch. We do not believe this is inconsistent with his statement in the affidavit as to people coming from the house. In sum we do not believe the affidavit was so impeached by the showing at the second voir dire hearing that we should hold the magistrate could not have relied upon it. The appellants' first assignment of error is overruled.

[3]    Each of the defendants contends that the statements made by them before they were warned of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966) should have been suppressed because they had not been warned of their rights and because they had been unlawfully arrested. An officer may briefly detain a person if he can point to specific and articulable facts which justify a conclusion that a crime has probably been committed. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). He may then "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. ---, ---, 104 S.Ct. 3138, 3150, 82 L.Ed. 2d 317, 334 (1984). We believe that in this case the officers could point to specific and articulable facts which justified their belief that a crime had been committed. They had a map which showed a marijuana field close by and the map in all other respects was accurate. The house from which the officers had reason to believe the defendants had just left was as shown on the map. The officers had the right to detain the defendants while Mr. Call checked to see if the marijuana field was where the map indicated it would be and the officers could ask the questions which were asked. This assignment of error is overruled.

The defendants assign error to the admission of evidence that their fingerprints were found on objects in the house. They base this argument on the premise that the search of the house was illegal. We have held it was a proper search. This assignment of error is overruled.

[4]    The defendants next assign error to the failure of the court to give their requested jury instructions that as to each defendant his silence was not to be construed as evidence that his fingerprints could only have been impressed at the time the crime

was committed and that neither of them had to explain the presence of his fingerprints. The court instructed the jury that the defendants' silence was not to be considered against them in any way. It also instructed the jury that they could not consider the fingerprint evidence unless they were satisfied beyond a reasonable doubt as to each defendant that the fingerprints were his and could have been impressed only while the marijuana was in the house. We hold that this instruction substantially complied with the defendants' request and was not prejudicial to either of them.

The defendants next assign error to the admission of testimony by Mr. Call and by Nick Nixon, a deputy sheriff, regarding their opinions as to the weight of the marijuana. The defendants contend neither of the witnesses was qualified as an expert in "weight" and their testimony was hearsay because they gave the result of what was shown on a scale. We are bound by *State v. Singleton*, 33 N.C. App. 390, 235 S.E. 2d 77 (1977), to overrule this assignment of error.

[5] The defendants next assign error to the court's charge that if the jury found that either of the defendants was in close proximity to the marijuana that would be a circumstance together with other circumstances from which the jury could infer the defendants were aware of the presence of marijuana and had the power and intent to control its disposition or use. The defendants contend this was error because the jury was not told what other kinds of circumstances could be considered and that it allowed the jury to convict both defendants if they found one of them was in close proximity to the marijuana. There was no objection to this portion of the charge and it is not properly before us for review. North Carolina Rules of Appellate Procedure, Rule 10(b)(2). We do not believe it was error. We believe the other circumstances to be considered by the jury were amply stated in other parts of the charge. In the instructions on acting in concert we believe the court properly explained how the jury should consider evidence that one of the defendants was in proximity to the marijuana. This assignment of error is overruled.

The defendants next assign error to the court's overruling their motions to quash the bills of indictment. They argue that *State v. Sanderson*, 60 N.C. App. 604, 300 S.E. 2d 9, *disc. rev.*

*den.*, 308 N.C. 679, 304 S.E. 2d 759 (1983) is a better-reasoned case than *State v. Anderson*, 57 N.C. App. 602, 292 S.E. 2d 163, *disc. rev. den.*, 306 N.C. 559, 294 S.E. 2d 372 (1982) and ask us to over-rule *Anderson*. This we decline to do. The defendant Moore also argues that he was first indicted for only one offense and possibly because of his vigorous defense he was one year later indicted for two offenses. He does not attack the form of the indictment. We cannot speculate as to why the State chose to indict Moore for two offenses rather than one. This assignment of error is over-ruled.

[6] The defendants next assign error to the court's overruling their motions to dismiss. The case was tried on the theory that the defendants had constructive possession of the marijuana. If a person has the intent and capability to maintain control and do-minion over personal property he has constructive possession of it. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972). The evidence shows in this case that both defendants were found at the house and their fingerprints were found on items within the house. Moore had in his possession a key that fit the gate and the door to the house. Moore's truck was present on the premises and the truck contained twine identical to the twine used to tie the marijuana plants to the stakes and to twine found within the house. Transeau admitted he looked after the place. We hold that from this evidence the jury could find each of the defendants had constructive possession of the marijuana. We do not believe *State v. Minor*, 290 N.C. 68, 224 S.E. 2d 180 (1976), relied on by the de-fendants, is applicable. In that case there was no evidence linking the defendant to the marijuana other than the fact that he had been a visitor to an abandoned house located 100 feet from a marijuana field.

Both defendants assign error to the court's overruling their motions to dismiss on the ground that G.S. 90-95(h) is unconstitu-tional. Both of them concede that this Court in *State v. Willis*, 61 N.C. App. 23, 300 S.E. 2d 420, *modified and affirmed*, 309 N.C. 451, 306 S.E. 2d 779 (1983) and *State v. Porter*, 65 N.C. App. 13, 308 S.E. 2d 767 (1983), *cert. den.*, 310 N.C. 155, 311 S.E. 2d 195 (1984) has upheld the constitutionality of this statute. They ask us to reconsider this question. This we decline to do.

The defendants contend that the court erred in its charge because it did not sufficiently state the defendants' evidence or contentions. At the conclusion of the court's charge the defendants asked for instructions that they had no burden to explain the presence of their fingerprints and that evidence that they were in close proximity to each other does not of itself indicate that they were acting for a common purpose. We believe that the court's charge which put the burden of proof on the State to prove the impression of the fingerprints adequately stated this contention of the defendants. We also believe that the court's charge as to acting in concert adequately stated the defendants' contentions.

[7] The defendant Transeau assigns error to the court's charging on acting in concert. He argues that at most the evidence shows that he was present at the house but that there was no evidence that he was present when Moore did some act which constituted the crime. There was evidence that both defendants were in the house in which there was a large quantity of marijuana. We believe the jury could conclude from this that the two defendants acted together to possess the marijuana. This supports a charge on acting in concert. *See State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979). This assignment of error is overruled.

The defendant Transeau also assigns error to the admission of evidence as to the marijuana growing in the field. We hold that when the State offered evidence that there was a large quantity of marijuana in the house and there was a field of marijuana 1,400 feet down a path from the house the jury could conclude that the defendants controlled the field and were bringing marijuana from the field to the house. *State v. Wiggins*, 33 N.C. App. 291, 235 S.E. 2d 265, *cert. denied*, 293 N.C. 592, 241 S.E. 2d 513 (1977), is not applicable. In that case no marijuana was found in the house. This assignment of error is overruled.

The defendant Moore assigns error to the denial of his motion to suppress evidence as to the keys seized from his person and the twine taken from the truck. He bases his argument under this assignment of error on the premise that his arrest was unlawful and he was not properly advised pursuant to *Miranda*. We have held that his arrest was lawful and his *Miranda* rights were not violated. This assignment of error is overruled.

No error.

Chief Judge HEDRICK concurs.

Judge PARKER concurs in the result.

Judge PARKER concurring in the result.

Before a magistrate may issue a valid warrant to search a particular residence, there must be "probable cause" to believe that evidence of a crime will be discovered in that particular dwelling. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed. 2d 930 (1967). In my opinion, the deputy sheriff's affidavit supporting his application for the warrant was insufficient to show probable cause to believe marijuana was in the house; therefore, I do not agree with the majority's analysis of the validity of the search.

In his affidavit, Deputy Call described the information he had received from his confidential source and stated that he had seen the marijuana field. However, the only statement concerning the house was that Deputy Call had "observed subjects in the and coming out of the . . . residence near the marijuana field." He did not identify the "subjects" or in any way connect them with the marijuana field. The affidavit is void of any information about marijuana in the house. The officers saw no marijuana or drug paraphernalia in the house and the suspects had no traces of marijuana on them. The mere fact that the house is "near" the field does not sufficiently connect the house to the field to establish probable cause to believe that there will be marijuana in the house. *See Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed. 2d 1503 (1958).

However, in light of the recent decision in *United States v. Leon*, --- U.S. ---, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984), the marijuana found in the house was still admissible even though the search warrant was invalid. In *Leon*, the Supreme Court held that

> . . . the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neu-

tral magistrate but ultimately found to be unsupported by probable cause.

*Id.* at ---, 104 S.Ct. at 3407, 82 L.Ed. 2d at 684.

For the foregoing reasons, I concur in the result.