STATE OF NORTH CAROLINA v. LORENZO PAYTON

No. COA08-1315

(Filed 21 July 2009)

**1. Criminal Law— requested instruction—improper statement of law**

The trial court did not err in a first-degree burglary, double robbery with a dangerous weapon, and double second-degree kidnapping case by failing to give defendant's requested jury instruction regarding the fingerprint evidence because: (1) the requested instruction concerned a subordinate feature of the case since it did not relate to elements of the crime itself nor to defendant's criminal responsibility; and (2) the requested instruction was not a correct statement of law.

**2. Kidnapping— second-degree kidnapping—motion to dismiss—sufficiency of evidence—removal and restraint separate and apart from armed robbery**

The trial court erred by denying defendant's motion to dismiss the second-degree kidnapping charges because: (1) the State failed to show that the removal and restraint of the victims was separate and apart from the armed robbery when the movement of the victims from the bathroom area to the bathroom was a technical asportation; and (2) requiring the victims to lie on the floor while the robbery was taking place did not place the victims in greater danger than the robbery itself.

Appeal by defendant from judgments entered 15 February 2008 by Judge David S. Cayer in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 April 2009.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Grady L. Balentine, for the State.*

*Constance E. Widenhouse and Staples Hughes, for defendant-appellant.*

HUNTER, ROBERT C., Judge.

Lorenzo Payton ("defendant") appeals from judgments entered 15 February 2008 in Mecklenburg County Superior Court subsequent to jury convictions finding him guilty of first degree burglary, two counts

of robbery with a dangerous weapon, and two counts of second degree kidnapping. After careful review we find no error in part, reverse in part, and remand for resentencing.

## Background

At approximately 7:00 p.m. on 19 December 2005, Jackie Mizenheimer ("Jackie") and her daughter, Jennifer Mizenheimer ("Jennifer"), were on the top floor of Jackie's home. The women heard a "dinging" sound coming from the security alarm, which indicated that a door had been opened. Jackie assumed that the wind had blown open a door and chose not to investigate.

Approximately twenty to thirty minutes later, Jackie went to her bedroom on the second floor and discovered that her jewelry had been rifled through. Jennifer then joined her mother on the lower level and realized that she had not heard another "ding," meaning that the intruder(s) had not left the house. Jackie and Jennifer then started to exit the "bathroom area," which was described as a foyer leading from the bathroom to the bedroom, when they saw three black men heading toward them. One man was holding a handgun and one was holding a kaleidoscope, though at the time the women were not certain what this latter object was.

The men instructed the women to move into the bathroom, lie on the floor, and not look at them. Jennifer, being eight months pregnant at the time, had trouble lying on her stomach and was told by one of the men to sit on the floor and turn her face away. Jackie was questioned about where her husband was, when he would return home, and where she kept money in the house. Jackie told the men that she had $40 in her purse and that her husband would be home any minute. The man with the gun remained outside the bathroom while the other two men retrieved the women's purses. Upon their return, the men demanded more money, which Jackie claimed she did not have.

The men ordered the women not to look at them and then left, closing the bathroom door. The women heard the men remove a plasma television from the bedroom and leave the house. Jackie estimated that she and her daughter were in the bathroom for ten to fifteen minutes. After waiting and listening to ensure that they were alone in the house, Jackie and Jennifer went upstairs to call the police. Finding that the kitchen phone was missing, they used a cellular phone to call 911.

Jackie noticed at that time that her decorative kaleidoscope was on the kitchen counter, which was not its usual location. Jennifer indicated at trial that one of the intruders was in fact holding the kaleidoscope when they first approached the women. A single fingerprint taken from the kaleidoscope matched defendant's left thumb.

Not long before the break in, cable television servicemen, pest control workers, and installers of the plasma television had been in the Mizenheimer home; however, Jackie testified that she had not seen any of these people holding the kaleidoscope and that none of them would have been in the room where the kaleidoscope was typically kept. Jackie and Jennifer claimed that they did not know defendant, and to their knowledge, he had never been in their home prior to the robbery. Jennifer testified at trial that none of the men wore gloves. She further testified that she had a clear look at the person holding the kaleidoscope for a brief moment before she was told to look away. She stated that she identified defendant in a photographic line-up, but admitted that she told police she was not "100 percent sure." Detective Ware, who organized the photographs for the line-up but did not actually administer the line-up, testified that Jennifer did not correctly identify defendant. Jennifer's mother, Jackie, was not shown a photographic line-up. When questioned by officers, defendant denied any involvement in the robbery. Defendant was indicted on one count of first degree burglary, two counts of robbery with a dangerous weapon, and two counts of second degree kidnapping. The trial in this matter began on 11 February 2008 and continued through 13 February 2008. On 14 February 2008, a jury convicted defendant of all charges. Judgment was entered on 15 February 2008, and defendant was sentenced to three consecutive sentences of 77 to 102 months imprisonment.

Analysis

I.

[1] Defendant first argues that the trial court erred in failing to give the following requested jury instruction:

The defendant has been charged with Robbery with a Dangerous Weapon, 2nd Degree Kidnapping and 1st Degree Burglary. The State relies upon fingerprint evidence in this case. *For you to find the defendant guilty, the State must prove beyond a reasonable doubt:*

1. That the fingerprints found at the scene of the crime correspond with those of the Defendant, and if so,

2. That the fingerprints could have been impressed only at the time the crime was committed.

"Defendant's requested instruction concerned a subordinate feature of the case since it did not relate to elements of the crime itself nor to defendant's criminal responsibility therefore." *State v. Bradley*, 65 N.C. App. 359, 363, 309 S.E.2d 510, 513 (1983). However, our Supreme Court has held that "[i]f a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance." *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993); *see also State v. Haywood*, 144 N.C. App. 223, 234, 550 S.E.2d 38, 45 (2001) ("A trial court must give a requested instruction if it is a correct statement of the law and is supported by the evidence."). Here, the requested jury instruction was not correct in itself, and therefore, the trial court did not err in refusing to give it.

The strongest evidence presented by the State was the fact that defendant's fingerprint was on the kaleidoscope, accompanied with the victims' claim that one of the robbers was holding the kaleidoscope without wearing gloves during the robbery. However, in order for the jury to return a verdict of guilty, the State did not have to prove beyond a reasonable doubt a subordinate feature of the case, that the fingerprint found was defendant's and that defendant left the print during the robbery. While the fingerprint identification was the State's most solid evidence, the jury could have chosen to disregard it and rely solely on Jennifer's testimony that she identified defendant as one of the robbers and that he did in fact commit the crimes alleged. Though there was conflicting evidence regarding her identification, as the finder of fact, the jury is responsible for "[o]bserving the parties and the witnesses in order to assess credibility and determine the weight to give to the evidence . . . ." *State v. Kirby*, 187 N.C. App. 367, 377, 653 S.E.2d 174, 181 (2007).

In the case of *State v. Moore*, 79 N.C. App. 666, 340 S.E.2d 771 (1986), where the defendants were alleged to constructively possess marijuana found in a residence,

[t]he defendants . . . assign[ed] error to the failure of the court to give their requested jury instructions that as to each defendant his silence was not to be construed as evidence that his fingerprints could only have been impressed at the time the crime was

committed and that neither of them had to explain the presence of his fingerprints.

*Id.* at 673-74, 340 S.E.2d at 777. This Court found no error since

[t]he [trial] court instructed the jury that the defendants' silence was not to be considered against them in any way. It also instructed the jury that *they could not consider the fingerprint evidence* unless they were satisfied beyond a reasonable doubt as to each defendant that the fingerprints were his and could have been impressed only while the marijuana was in the house. We hold that this instruction substantially complied with the defendants' request and was not prejudicial to either of them.

*Id.* at 674, 340 S.E.2d at 777 (emphasis added).

In *Moore*, the defendants' initial request was a correct statement of law. Though the court did not give the requested instruction verbatim, the trial court instructed the jury on how to properly consider the fingerprint evidence. *Id.* If the jury determined that the defendants did not leave their fingerprints during a particular time period, then the jury was not to consider the fingerprints as evidence of guilt. *Id.*

In the case at bar, defendant's request did not go to the proper consideration of the evidence; rather, defendant's requested instruction would have required the jury to return a verdict of not guilty if it found the fingerprint evidence to be unreliable. That instruction is simply not a correct statement of law where there was additional evidence, albeit contradicted by further testimony, that defendant was present on the night of the robbery. Had defendant requested an instruction, such as that seen in *Moore*, which pertained to the consideration of the evidence, the trial court would have been required to give that instruction in substance, but that is not the case here. *See Bradley*, 65 N.C. App. at 363, 309 S.E.2d at 513 (holding that the trial court committed prejudicial error by failing to give a requested instruction on the probative value of fingerprint evidence where the State relied primarily on that evidence).

In sum, because the requested instruction was not a correct statement of law, we find that the trial court did not err in refusing to give it, either verbatim or in substance.

## II.

[2] Next, defendant argues that the trial court erred in denying defendant's motion to dismiss the second degree kidnapping charges

STATE v. PAYTON

[198 N.C. App. 320 (2009)]

due to insufficiency of the evidence. Specifically, defendant argues that the State failed to show that the removal and restraint of the victims was separate and apart from the armed robbery. We agree.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*Id.* at 99, S.E.2d at 117.

N.C. Gen. Stat. § 14-39(a) (2007) states in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

. . . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony

. . . .

Our Supreme Court has examined these terms and reasoned,

[the] term "confine" connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term "restrain," while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement.

*State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

With regard to convictions for both kidnapping and armed robbery, it is well established that

there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another

felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony. Such independent and separate restraint need not be, itself, substantial in time . . . .

*Id.* at 524, 243 S.E.2d at 352. Likewise, to support a separate kidnapping conviction, the removal element must be "separate and apart from that which is an inherent, inevitable part of the commission of another felony." *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981).

However, "[i]t is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim." *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351.

The key question here is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to greater danger than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent."

*State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446).

Our Courts have upheld convictions for armed robbery and kidnapping where the restraint and/or removal was deemed to be a separate act. *See, e.g., State v. Johnson*, 337 N.C. 212, 221-22, 446 S.E.2d 92, 98 (1994) (The defendant threatened to kill victim-husband, forcibly removed him from the bedroom to the living room, bound his hands, and struck him with a lug wrench in front of victim-wife who was also bound.); *State v. Ly*, 189 N.C. App. 422, 428, 658 S.E.2d 300, 305 (2008) (The "defendants bound and blindfolded each victim as he or she entered the home, forced them to lie on the floor, and left the victims bound. In addition, one of the victims attempted to escape, but was brought back to the house at gunpoint, and was bound and blindfolded."); *State v. Morgan*, 183 N.C. App. 160, 167, 645 S.E.2d 93, 99 (2007) ("[T]hree robbers bound the victims with duct tape, took money and cellular telephones, and left the victims bound when they left the hotel room."); *State v. Raynor*, 128 N.C. App. 244, 250, 495 S.E.2d 176, 180 (1998) (The defendant and his accomplice restrained and moved the victim from the front door of his residence to the bedroom where they took money from his wallet, then moved the victim

to the kitchen to take his car keys, and finally attempted to tie up the victim.); *State v. Davidson*, 77 N.C. App. 540, 543, 335 S.E.2d 518, 520 (1985) (In order "to remove the victims from the view of passersby who might have hindered the commission of the crime[,]" the victims were forced at gunpoint to walk from the front of the store to the back of the store where they were confined in a dressing room while the defendants robbed the victims and the store.).

Our Courts have also held that a kidnapping conviction was not justified because the restraint and/or removal was an inherent part of the armed robbery. *See, e.g., State v. Ripley*, 360 N.C. 333, 334-35, 626 S.E.2d 289, 290 (2006) (As the victims were attempting to leave a hotel they feared was being robbed, the defendant and his accomplices ordered the victims to enter the motel lobby and lie on the floor where they were robbed.); *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446 (Defendants performed a "technical asportation" when they removed the victim from the front of a store to the back of the store at knife-point in order for the victim to open a safe.); *State v. Taylor*, 191 N.C. App. 561, 564, 664 S.E.2d 375, 378 (2008) (The victims were forced at gunpoint to lie down on the floor of a restaurant while another robber went to the safe in the back of the restaurant.); *State v. Cartwright*, 177 N.C. App. 531, 537, 629 S.E.2d 318, 323 (2006) (Defendant committed a "mere asportation" when he moved the victim from the kitchen to the den and then to her bedroom.); *State v. Featherson*, 145 N.C. App. 134, 139, 548 S.E.2d 828, 832 (2001) (The victim was loosely bound to the defendant, an employee of the restaurant who helped the robbers gain access to the restaurant, and forced to the floor while the robbery took place.).

Our Supreme Court in *State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998) upheld the convictions of kidnapping and armed robbery of one victim who was bound at the wrists, forced to lie on the floor, and kicked twice in the back. *Id.* at 559, 495 S.E.2d at 370. However, the Court reversed the conviction of kidnapping of the other victim who was held at gunpoint during the robbery, but not bound or physically harmed. *Id.* at 560, 495 S.E.2d at 370.

Upon surveying the case law, there is consistency in the Courts' opinions where the evidence tended to show that a victim was bound and physically harmed by the robbers during the robbery. Clearly that type of restraint creates " 'the kind of danger and abuse the kidnapping statute was designed to prevent.' " *Pigott*, 331 N.C. at 210, 415 S.E.2d at 561 (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446). The case law does not provide a "bright line" rule for situations where a

victim is merely ordered to move to another location while the robbery is taking place, but is not bound or physically harmed. The present case presents such a factual scenario.

Here, Jackie and Jennifer were ordered at gunpoint to move from the "bathroom area" to the bathroom and to maintain a submissive posture, but neither was bound or physically harmed. After being questioned about where money could be located in the house, the door to the bathroom was closed. The women were in the bathroom for ten to fifteen minutes total while the three men completed the robbery.[1] Under these particular facts and circumstances, we find that the removal and restraint of Jackie and Jennifer was an inherent part of the robbery and did not expose the victims to a greater danger than the robbery itself.

We find that the movement of the women from the "bathroom area" to the bathroom was a "technical asportation," such as seen in *Irwin*, *Ripley*, and *Cartwright*. The women were then asked to lie on the floor in the bathroom, and they remained in that position until the robbery was complete. As seen in *Taylor* and *Beatty*, requiring the victims to lie on the floor while the robbery is taking place does not place the victims in greater danger than the robbery itself. Unlike *Davidson*, the victims in this case were not confined in another room in order to keep passersby from hindering the commission of the crime. In sum, we find the circumstances in this case to be more like *Irwin* than *Davidson*.

We would like to note that if the facts of this case support a conviction for kidnapping, then essentially any non-violent movement of a victim could result in a kidnapping conviction, which we do not believe was the intent of the legislature in enacting the kidnapping statute.

Because the State presented insufficient evidence with regard to the second degree kidnapping charges, the trial court erred in denying defendant's motion to dismiss those charges.

## Conclusion

For the foregoing reasons, the trial court did not err in refusing to give defendant's requested jury instruction, but erred in denying defendant's motion to dismiss the two counts of second de-

---

1. While the women were confined in a room, according to *Fulcher*, this "restriction upon freedom of movement by confinement" also qualifies as a restraint. *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351.

gree kidnapping. Accordingly, we must vacate the convictions of second degree kidnapping and remand this case to the trial court for resentencing.

No error in part, reversed in part, and remanded for resentencing.

Judges McGEE and BEASLEY concur.