An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-266

Filed: 20 October 2015

Mecklenburg County, Nos. 13 CRS 30542, 214471-73

STATE OF NORTH CAROLINA

v.

JAMARIO JERMAINE MCCLURE

Appeal by Defendant from judgment entered 8 August 2014 by Judge C. Thomas Edwards in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 September 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Bethany A. Burgon, for the State.*
>
> *Glover & Petersen, P.A., by Ann B. Petersen, for Defendant.*

STEPHENS, Judge.

In this appeal, Defendant presents two issues for our consideration: (1) whether the removal of a robbery victim was sufficiently separate and distinct from that crime so as to support an additional charge of second-degree kidnapping, and (2) whether a jury instruction on the doctrine of recent possession of stolen property was warranted. After careful review, we answer both questions in the affirmative, and, accordingly, we find no error in the trial of Defendant Jamario Jermaine McClure.

*Factual and Procedural History*

On the morning of 5 November 2012, Malik Douglas was asleep in the home at 1115 Greenleaf Avenue in Charlotte where he lived with his stepfather and mother, Roslyn McClendon. Douglas, an eleventh-grade student who had been suspended from school, was the only person in the home after his mother left for work about 7:30 a.m. A little after 8:30 a.m., Douglas was awakened by a noise. After discovering that there was no one at the front door, Douglas noticed a light on in his mother's room. When he investigated, Douglas discovered a man going through his mother's belongings. When Douglas asked what the man was doing, he responded that he was a friend of Douglas' mother and that she had invited him to the house. Douglas left his mother's room and headed down the hall, intending to call the police. When Douglas looked back, he saw the intruder pointing a gun at him. The man forced Douglas to his own bedroom and demanded all of the phones and money Douglas had. After obtaining a cell phone, a landline telephone, and about $40 or $50 from Douglas, the man asked whether there were any illegal drugs in the home. When Douglas told the man there were not, he forced Douglas back into McClendon's room where Douglas noticed a black bag that contained, *inter alia*, his mother's Coach pocketbook. The intruder told Douglas to lie face down on the floor. After Douglas complied, the man ran out of the house through the front door. Douglas borrowed a cell phone from a neighbor and called 911.

Charlotte-Mecklenburg Police Department ("CMPD") officers responded to the call. Douglas described the intruder as a 25-year-old black man about 5 feet 11 inches tall with long deadlocked hair past his shoulders, a dark complexion, and gold teeth. CMPD crime scene investigators discovered a broken window in McClendon's room and took fingerprints from the scene. When she arrived home, McClendon discovered that her laptop computer and jewelry were missing, including her 1990 class ring from East Mecklenburg High School. A few days later, CMPD Detectives Stephen Todd and Michael Peacock showed Douglas a photo lineup of six black men, one of whom was a possible suspect, but Douglas was not able to identify the intruder.

On 10 April 2013, CMPD Detective David Dickinson discovered information in a database of pawnshop sales that someone using McClure's driver's license as identification sold jewelry, including McClendon's class ring, to Brownlee Jewelers on 5 November 2012 just after 1:00 p.m. Based upon this information, on 12 April 2013, warrants were issued for McClure's arrest. CMPD officers failed to locate McClure at his mother's home, but McClure later called the CMPD and agreed to turn himself in. When McClure arrived at the police department, he was arrested, given his *Miranda* warnings, and interrogated. McClure waived his *Miranda* rights and admitted having sold the jewelry to Brownlee Jewelers. However, McClure explained that he bought the jewelry for $60 cash and some marijuana from a man

he met on the street. Detective Todd put together a new photo lineup that included a photograph of McClure. Douglas identified McClure as the intruder.

On 29 April 2013, the grand jury returned indictments charging McClure with robbery with a dangerous weapon, second-degree kidnapping, and breaking and entering with the intent to commit a felony therein. On 29 July 2013, McClure was indicted for having attained the status of an habitual felon. The cases came on for trial at the 4 August 2013 criminal session of Mecklenburg County Superior Court. After the jury returned guilty verdicts on the criminal charges, McClure entered a plea admitting his status as an habitual felon. The trial court consolidated all of the verdicts into a single judgment and sentenced McClure to 88 to 118 months in prison. McClure gave notice of appeal in open court.

## *Discussion*

McClure argues that the trial court erred in (1) denying his motion to dismiss the kidnapping charge for insufficiency of the evidence, and (2) instructing the jury on the doctrine of recent possession of stolen property. We find no error.

*I. Motion to dismiss the kidnapping charge*

McClure first argues that the trial court erred in denying his motion to dismiss the kidnapping charge for insufficiency of the evidence. We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

"Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator . . . . If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation and internal quotation marks omitted), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

Under our General Statutes,

> [a]ny person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of . . . [f]acilitating the commission of any felony or facilitating flight . . . following the commission of a felony. . . .

N.C. Gen. Stat. § 14-39(a)(2) (2013). "If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree." *Id.* § 14-39(b).

> The term "restrain," while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement. Thus, one who is physically seized and held, or whose hands or feet are bound, or who, by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute.

*State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

Noting the double jeopardy implication, our Supreme Court has held "that [section] 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes." *Id.* Accordingly, the restraint required to prove kidnapping must be "separate and apart from that which is inherent in the commission of the other felony." *Id.*

> On the other hand, it is well established that two or more criminal offenses may grow out of the same course of action, as where one offense is committed with the intent thereafter to commit the other and is actually followed by the commission of the other . . . . In such a case, the perpetrator may be convicted of and punished for both crimes. Thus, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony . . . , provided the restraint, which constitutes the kidnapping, is a separate,

complete act, independent of and apart from the other felony.

*Id.* at 523-24, 243 S.E.2d at 351-52. For example, in a case where the defendants kidnapped a woman in a parking lot and forced her into nearby woods where she was raped, our Supreme Court held:

> Removal of [the victim] from her automobile to the location where the rape occurred was not such asportation as was inherent in the commission of the crime of rape. Rather, it was a separate course of conduct designed to remove her from the view of a passerby who might have hindered the commission of the crime. To this extent, the action of removal was taken for the purpose of facilitating the felony of first-degree rape. Thus, [the] defendant's conduct fell within the purview of [section] 14-39 and the evidence was sufficient to sustain a conviction of kidnapping under that section.

*State v. Newman*, 308 N.C. 231, 239-40, 302 S.E.2d 174, 181 (1983).

At the close of the State's evidence in this case, McClure moved to dismiss all charges. The trial court denied that motion, and, after McClure rested his case without offering any evidence, he again moved to dismiss all charges. Again, the trial court denied the motion. McClure then made an additional motion to dismiss the kidnapping charge, contending there was insufficient evidence of restraint beyond that inherent and inevitable in the commission of a robbery. The trial court denied that motion.

On appeal, McClure contends the latter denial was error because his removal of Douglas at gunpoint from Douglas' mother's room to Douglas' bedroom and back

again "was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense[,]" citing *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981), to support his argument. In *Irwin*, one of two men who were attempting to rob a drugstore "forced [an employee] at knifepoint to walk from her position near the fountain cash register to the back of the store in the general area of the prescription counter and safe." *Id.* Our Supreme Court held that the "removal to the back of the store was an inherent and integral part of the attempted armed robbery" because, "[t]o accomplish [the] defendant's objective of obtaining drugs it was necessary that [one of the two store employees present] go to the back of the store to the prescription counter and open the safe." *Id.*

McClure also relies heavily on the removal of the victims in *State v. Payton*, 198 N.C. App. 320, 679 S.E.2d 502 (2009), as being analogous to his walking Douglas up and down the hall in his case. In *Payton*, two women

> were ordered at gunpoint to move from the "bathroom area" to the bathroom and to maintain a submissive posture, but neither was bound or physically harmed. After being questioned about where money could be located in the house, the door to the bathroom was closed. The women were in the bathroom for ten to fifteen minutes total *while the three men completed the robbery*.

*Id.* at 328, 679 S.E.2d at 507. This Court held that "the movement of the women from the 'bathroom area' to the bathroom was a 'technical asportation,' such as seen in *Irwin*," noting that previous cases had established that

- 8 -

> requiring the victims to lie on the floor *while the robbery is taking place does not place the victims in greater danger than the robbery itself.* Unlike [in *State v.*] *Davidson*, the victims in this case were not confined in another room in order to keep passersby from hindering the commission of the crime."

*Id.* (emphasis added).

We find *Irwin* and *Payton* distinguishable. Although the removal of Douglas to his bedroom, where McClure forced Douglas to give him money and phones, was integral to McClure's commission of that portion of the robbery, McClure's removal of Douglas back to his mother's room and his forcing Douglas to lie down on the floor and not move were not. At that point, McClure had already robbed Douglas of the money and phones and had already filled the black bag with McClendon's pocketbook and jewelry. Thus, unlike the removal in *Payton*, which took place during the commission of the robbery, the removal of Douglas to McClendon's room where he was forced to lie on the floor occurred after the robbery. We find the removal here more analogous to that in *State v. Davidson*, where

> the perpetrators, including [the] defendant, forced the victims at gunpoint to walk from the front of the store some thirty to thirty-five feet to a dressing room in the rear where they bound them with tape and robbed both them and the store. Since none of the property was kept in the dressing room, *it was not necessary to move the victims there in order to commit the robbery.* Removal of the victims to the dressing room thus was not an inherent and integral part of the robbery. Rather, as in *Newman*, it was a separate course of conduct designed to remove the victims from the view of passersby who might have hindered the

commission of the crime. The evidence thus was sufficient under [section] 14-39 to sustain the kidnapping convictions, and the court properly denied [the] defendant's motion to dismiss the kidnapping charges.

77 N.C. App. 540, 543, 335 S.E.2d 518, 520, *disc. review denied and appeal dismissed*, 314 N.C. 670, 337 S.E.2d 583 (1985), *disc. review denied*, 315 N.C. 393, 338 S.E.2d 882 (1986). McClure's removal of Douglas to lie on the floor of McClendon's room was not necessary to the commission of the crime, but rather served to prevent anyone from hindering McClure. For example, Douglas could have left the home to seek help or followed McClure as he fled in order to report his vehicle or route of escape. In sum, because the removal of Douglas to McClendon's room "was not an inherent and integral part of the robbery[, but r]ather, . . . was a separate course of conduct designed to" prevent interference with the commission of the crime, "[t]he evidence thus was sufficient under [section] 14-39 to sustain the kidnapping conviction[.]" *See id.* The trial court did not err in denying McClure's motion to dismiss the kidnapping charge, and, accordingly, this argument is overruled.

*II. Jury instruction on recent possession of stolen property*

McClure also argues that the trial court erred in instructing the jury, over his objection, on the doctrine of recent possession of stolen property. Specifically, McClure contends that he presented a reasonable explanation for his possession of McClendon's class ring and other stolen items sold to the pawnshop on the day of the

robbery so as to overcome any presumption about his possession of those recently stolen goods. We disagree.

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted). "The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973) (citations omitted), *cert. denied*, 418 U.S. 905, 41 L. Ed. 2d 1153 (1974). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *Id.* (citations omitted). "Where jury instructions are given without supporting evidence, a new trial is required." *State v. Porter,* 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citation omitted).

"It is the general rule in this State that one found in the unexplained possession of recently stolen property is presumed to be the thief." *State v. Raynes*, 272 N.C. 488, 491, 158 S.E.2d 351, 353 (1968).

> In order for the doctrine [of recent possession] to be invoked, the State must prove beyond a reasonable doubt that: (1) the property is stolen; (2) it was found in the defendant's custody and subject to his control and disposition to the exclusion of others; and (3) the possession was recently after the unlawful taking.

*State v. Wilson*, 313 N.C. 516, 535, 330 S.E.2d 450, 463 (1985) (citations omitted).

"This is a factual presumption and is strong or weak depending on circumstances—the time between the theft and the possession, the type of property involved, and its legitimate availability in the community." *Raynes*, 272 N.C. at 491, 158 S.E.2d at 353-54.

In *Raynes*, for example, our Supreme Court explained that

> [t]he possession of an unmarked carton of Camel cigarettes, even in a short time after cigarettes have been stolen, in the absence of some further identification, will not be as strong as the possession of a recently stolen pillowcase, a three-strand pearl necklace, a diamond wedding band, a Hamilton watch, and a Norelco electric razor, and several hundred dollars in nickels, dimes, quarters and half-dollars. The possession of these stolen articles on Sunday morning following a breaking on the previous afternoon presents a strong case of circumstantial evidence.

*Id.* at 491, 158 S.E.2d at 354.

On the other hand,

> [t]he inference which arises from the possession of recently stolen goods may be overcome by the presentation of a reasonable explanation for the possession of the goods. However, the issue of whether a reasonable explanation has been given must be decided by the jury. The apparent reasonableness of the explanation does not take the question from the jury nor does it necessarily lead to an acquittal.

*State v. Earley*, 38 N.C. App. 361, 363, 247 S.E.2d 796, 797-98 (1978) (citations omitted). In *Earley*, the defendant argued that the trial court erred in denying his

motion to dismiss because he had "presented sufficient evidence to overcome the presumption or inference of guilt created by the doctrine of recent possession." *Id.* at 363, 247 S.E.2d at 797. This Court held that

> the reasonableness of the defendant's explanation for his possession of the recently stolen goods was an issue for the jury. As there was sufficient evidence to justify a finding by the jury that the defendant was in possession of recently stolen goods, the jury was entitled to draw the inference that the defendant had stolen the goods in question.

*Id.* at 364, 247 S.E.2d at 798. Nothing in that case suggested that the trial court erred in instructing the jury on the doctrine of recent possession.

McClure cites *State v. Anderson*, 162 N.C. 571, 572, 77 S.E. 238, 238 (1913), for the proposition that it is error for a trial court to instruct the jury on the doctrine of recent possession where the defendant offers a reasonable explanation of his possession of the recently stolen property. We find that case distinguishable.

In *Anderson*,

> the court charged the jury as follows: "The law is that whenever a person is found in possession of property which has been stolen and recently after the theft, the law presumes that the person so found in possession is the one who has stolen the property, and this presumption is strong or weak according to the length of time which has passed between the time of the stealing and the time the said property is found in his possession, and *the burden then shifts to the person so found in possession to show, not beyond a reasonable doubt, but to the satisfaction of the jury, that he came by the property in a lawful manner, and thus rebut such presumption.*"

*Id.* (emphasis added). In reviewing that instruction, our Supreme Court held that

> when there are facts in evidence which would afford reasonable explanation of such possession, consistent with defendant's innocence, and which, if accepted, do explain it satisfactorily, the correct rule does not require the defendant to satisfy the jury that his evidence in explanation is true. But in such case, stating the law as to the presumption arising from recent possession, the court should tell the jury that if the testimony offered in explanation raises a reasonable doubt of guilt [the] defendant is entitled to acquittal.

*Id.* at 574-75, 77 S.E. at 239. In other words, the instructions were faulty in that they directed the jury that (1) someone found in possession of recently stolen property (2) is presumed to be the thief (3) without consideration of the *reasonableness* of any explanation offered by the defendant for his possession of the stolen property. *See id.*

Here, in contrast, the trial court instructed the jury:

> The State seeks to establish the Defendant's guilt by the doctrine of recent possession. For this doctrine to apply, the State must prove three things beyond a reasonable doubt. First, that property was stolen. Second, that the Defendant had possession of that property. A person possesses property when that person is aware of its presence and has both the power and intent to control its disposition or use. And third, that the Defendant had possession of the property so soon after it was stolen, *and under such circumstances as to make it unlikely that the Defendant gained possession honestly*.
>
> If you find these three things from the evidence, beyond a reasonable doubt, *you may consider them, together with all other facts and circumstances, in deciding whether or not the Defendant is guilty of robbery* or breaking or entering.

(Emphasis added). Unlike the instruction held to be error in *Anderson*, the trial court here did not tell the jury that the law presumes McClure stole the jewelry simply because he possessed it shortly after it was stolen and without any consideration of the reasonableness of his explanation regarding possession. Rather, the trial court explicitly told the jury that it must consider, not only whether the jewelry was stolen, whether McClure possessed it, and the length of time between the theft and his possession, but also whether the circumstances of McClure's possession "ma[d]e it unlikely that the Defendant gained possession honestly." Thus, unlike in *Anderson*, the trial court did not shift the burden onto McClure to prove his possession was lawful in order to rebut a presumption that he was the thief. Instead, the trial court properly instructed the jury that it must consider the circumstances of McClure's possession of the stolen property, beyond simply the timing, in order to determine the likelihood that his possession was lawful.

In sum, none of the case law cited by McClure suggests that it is error for a trial court to give an instruction on recent possession simply because the defendant has offered an explanation to explain his possession of recently stolen goods. Accordingly, McClure's argument to the contrary is overruled.

NO ERROR.

Judges MCCULLOUGH and ZACHARY concur.

Report per Rule 30(e).