*769
 
 BRYANT, Judge.
 

 *675
 
 Where the trial court erred in denying defendant's motions to dismiss all charges due to the State's failure to present substantial evidence, and where the trial court erred in instructing the jury on acting in concert, a theory not supported by the evidence, we vacate the judgments of the trial court.
 

 On 22 October 2013, Tommy Turner, a police officer with the Forest City Police Department was on duty and heard a report of a breaking and entering at 305 Hardin Road. Officer Turner drove to the address, joining Officer James Greene who was already on the scene. Officer Greene heard a commotion coming from inside the residence and announced the police were there and anyone inside was to come out. After about twenty minutes, Officer Turner, who was stationed at the back of the house, noticed smoke coming from the back of the house. The fire department was called, and around the same time, two men left the house through the front door. Because the officers were responding to a breaking and entering in progress, the two men, identified as Robert McEntire and defendant Andrew Robert Holloway, were placed in custody.
 

 *676
 
 Firemen who responded to the call discovered the source of the smoke in the kitchen to be a quantity of marijuana burning in the oven. The firemen doused the oven's contents with water and handed the marijuana to police officers waiting outside.
 

 Forest City police officers obtained a search warrant for the residence, and in the kitchen, officers found $4,000.00 in cash, McEntire's driver's license, and other items with McEntire's name on them, including a vehicle title. In a bedroom, officers found a gun, gun magazine, digital scales, and a small bag of marijuana. The total amount of marijuana recovered from the residence weighed 19.86 pounds. Officers later learned that McEntire lived at the two-bedroom house on 305 Hardin Road, although the original lessee was one Danielle Taylor. Other than a photograph of defendant found in a container in a bedroom, there were no items found in the residence bearing defendant's name or otherwise connected to defendant.
 

 On 15 September 2014, defendant was indicted on multiple charges, including trafficking in marijuana, possession with intent to sell and deliver marijuana, maintaining a dwelling house for keeping and selling marijuana, and possession of drug paraphernalia. On 17 November 2014, defendant was indicted as an habitual felon.
 
 [1]
 

 On 14 September 2015, defendant's case was called for trial before the Honorable Jeffrey P. Hunt, Superior Court Judge presiding. Defendant was also tried on a charge of possession of a firearm by a felon.
 

 At trial at the close of the State's evidence, defendant moved to dismiss all of the charges based on insufficient evidence, arguing that the State's only evidence tying defendant to the residence or the items discovered therein was his presence on the afternoon of 22 October 2013 and the single photograph of him found face down in a plastic storage container in a bedroom. The State countered that once the marijuana was burning and smoke was filling the house, "someone inside the residence is going to know about it. Certainly is going to have the ability to control its disposition and use at that point." According to the State, because there was no evidence of what defendant was doing inside the
 
 *677
 
 residence while the officers were knocking at the door, the jury was entitled to infer that defendant constructively possessed the drugs, drug paraphernalia, and the firearm, and that he, in concert with McEntire, kept the dwelling to distribute marijuana. The State also argued that "the photograph is evidence that [defendant] stays there[,]" and thus it was reasonable to infer that defendant
 
 *770
 
 was at the house "all the time." The trial court denied defendant's motion.
 

 Defendant's evidence included the testimony of his mother, Serene Holloway, and McEntire. McEntire had pled guilty to and was serving a sentence for trafficking, possession with intent to sell and deliver, possession of drug paraphernalia, and maintaining a dwelling in connection with the 22 October 2013 incident at his residence. Defendant's mother and McEntire explained how McEntire came to have the photograph of defendant. McEntire further testified that defendant was merely visiting on the day his home was searched and that defendant had arrived shortly before the police. McEntire also testified that the marijuana, paraphernalia, and firearm were all his and that defendant did not know about their presence in the home.
 

 At the close of all the evidence, defendant again moved to dismiss all the charges based on insufficient evidence. The court denied the motion.
 

 Without objection, the trial court instructed the jury on the theory of acting in concert generally as to all of the charges, in addition to instructing on actual and constructive possession. The jury convicted defendant of all possession-related charges except the firearm charge, of which he was acquitted. The jury also convicted defendant of knowingly maintaining a dwelling house, the lesser-included offense of intentionally keeping or maintaining a dwelling house. In a subsequent proceeding, the jury found defendant had attained the status of habitual felon. Defendant was sentenced to 120 days for maintaining a dwelling, 97 to 129 months for trafficking in marijuana, 38 to 58 months for possession with intent to sell and distribute marijuana, and 120 days for possession of drug paraphernalia, with all sentences running consecutively. Defendant gave notice of appeal in open court.
 

 _________________________
 

 On appeal, defendant contends the trial court erred in denying defendant's motion to dismiss for insufficient evidence and, therefore, plainly erred by instructing the jury that it could convict defendant of acting in concert where there was no evidence of a common criminal plan. We agree.
 

 *678
 
 Defendant first argues the trial court erred in denying his motion to dismiss where there was insufficient evidence of possession to prove any of the possessory offenses charged. Specifically, defendant contends the State erroneously relied on the theory of constructive possession and acting in concert and presented insufficient evidence that defendant maintained a dwelling for the purpose of keeping or selling a controlled substance.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quoting
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ).
 

 The court must also "view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence."
 
 Id.
 
 at 378-79,
 
 526 S.E.2d at 455
 
 (quoting
 
 Barnes
 
 ,
 
 334 N.C. at 75
 
 ,
 
 430 S.E.2d at
 
 918 ). Evidence presented by the State need only provide a reasonable inference of guilt in order for the motion to be denied and the case submitted to the jury.
 
 State v. Shelman
 
 ,
 
 159 N.C.App. 300
 
 , 305,
 
 584 S.E.2d 88
 
 , 92 (2003) (citation omitted). Contradictions and discrepancies in the evidence must be resolved in the State's favor, and defendant's evidence, unless favorable to the State, is not considered.
 
 Id.
 
 at 305,
 
 584 S.E.2d at 92-93
 
 (citations omitted). However, "[w]hen the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted."
 
 State v. Miller
 
 ,
 
 363 N.C. 96
 
 , 99,
 
 678 S.E.2d 592
 
 , 594 (2009) (citing
 
 State v. Lee
 
 ,
 
 348 N.C. 474
 
 , 488-89,
 
 501 S.E.2d 334
 
 , 343 (1998) ).
 

 *771
 
 A.
 
 Constructive Possession
 

 Defendant first argues the State failed to present substantial evidence demonstrating defendant's constructive possession of marijuana and drug paraphernalia. We agree.
 

 For possession with intent to sell or deliver marijuana, the State was required to present substantial evidence of three elements: (1) possession, (2) of a controlled substance, (3) with the intent to sell or deliver that controlled substance.
 
 N.C. Gen. Stat. § 90-95
 
 (a)(1)-(2) (2015).
 

 *679
 
 (1) Any person who ... possesses in excess of 10 pounds (avoirdupois) of marijuana shall be guilty of a felony which felony shall be known as "trafficking in marijuana" and if the quantity of such substance involved:
 

 a. Is in excess of 10 pounds, but less than 50 pounds, such person shall be punished as a Class H felon[.]
 

 Id.
 

 § 90-95(h)(1)a.
 

 In order to prevail on a motion to dismiss a possession of drug paraphernalia charge, the State must provide substantial evidence that (1) defendant possessed drug paraphernalia, and (2) defendant had "the intent to use [drug paraphernalia] in connection with controlled substances."
 
 State v. Hedgecoe
 
 ,
 
 106 N.C.App. 157
 
 , 164,
 
 415 S.E.2d 777
 
 , 781 (1992). "It is unlawful for any person to knowingly use, or to possess with intent to use, drug paraphernalia to ... store, contain, or conceal a controlled substance...."
 
 N.C. Gen. Stat. § 90-113.22
 
 (a) (2015). The statute specifically notes that "[s]cales and balances for weighing or measuring controlled substances" constitute drug paraphernalia.
 
 N.C. Gen. Stat. § 90-113.21
 
 (a)(5) (2015).
 

 The State must prove either "actual or constructive" possession in order to convict a defendant of possession of marijuana or drug paraphernalia.
 
 See
 

 State v. Harvey
 
 ,
 
 281 N.C. 1
 
 , 12,
 
 187 S.E.2d 706
 
 , 714 (1972). When a person lacks actual physical possession, but "nonetheless has the intent and capability to maintain control over a controlled substance[,]" constructive possession occurs.
 
 State v. Givens
 
 ,
 
 95 N.C.App. 72
 
 , 76,
 
 381 S.E.2d 869
 
 , 871 (1989) (quoting
 
 State v. Baize
 
 ,
 
 71 N.C.App. 521
 
 , 529,
 
 323 S.E.2d 36
 
 , 41 (1984) ). However, "[w]here possession of the premises is nonexclusive, constructive possession of the contraband materials may not be inferred without other incriminating circumstances."
 
 State v. Brown
 
 ,
 
 310 N.C. 563
 
 , 569,
 
 313 S.E.2d 585
 
 , 589 (1984) (citation omitted).
 

 " '[C]onstructive possession depends on the totality of the circumstances in each case,' so that '[n]o single factor controls.' "
 
 State v. Ferguson
 
 ,
 
 204 N.C.App. 451
 
 , 460,
 
 694 S.E.2d 470
 
 , 477 (2010) (alterations in original) (quoting
 
 State v. James
 
 ,
 
 81 N.C.App. 91
 
 , 93,
 
 344 S.E.2d 77
 
 , 79 (1986) ). "Our cases addressing constructive possession have tended to turn on the specific facts presented."
 
 Miller
 
 ,
 
 363 N.C. at 99
 
 ,
 
 678 S.E.2d at 594
 
 (citations omitted). But "two factors frequently considered are the defendant's proximity to the contraband and indicia of the defendant's control over the place where the contraband is found."
 
 Id.
 
 at 100,
 
 678 S.E.2d at 595
 
 .
 

 *680
 
 In
 
 Miller
 
 , the police found the defendant "in a bedroom of the home where two of his children lived with their mother."
 

 Id.
 

 The defendant was discovered sitting on the same end of the bed where cocaine was recovered and, upon sliding to the floor, he was within reach of the cocaine discovered on the floor behind the bedroom door.
 

 Id.
 

 The defendant's birth certificate and state-issued identification were also found in the same bedroom.
 

 Id.
 

 The N.C. Supreme Court reasoned that "[e]ven though [the] defendant did not have exclusive possession of the premises, these incriminating circumstances permit[ted] a reasonable inference that [the] defendant had the intent and capability to exercise control and dominion over cocaine in that room."
 

 Id.
 

 In
 
 Brown
 
 , the N.C. Supreme Court found sufficient other incriminating evidence in a case of constructive possession when cocaine and other drug packaging paraphernalia were found on a table beside which the defendant was standing when the officers entered the apartment, the defendant had been observed at the apartment multiple times, he possessed a key to the apartment, and he
 
 *772
 
 had over $1,700.00 in cash in his pockets.
 
 310 N.C. at 569-70
 
 ,
 
 313 S.E.2d at 589
 
 .
 

 In the instant case, there is no dispute that the marijuana recovered from the house at 305 Hardin Road was in excess of ten pounds, but less than fifty pounds.
 
 See
 
 N.C.G.S. § 90-95(h)(1) a. However, there was no evidence that defendant
 
 actually
 
 possessed the marijuana or drug paraphernalia, and defendant contends there was also insufficient evidence to show
 
 constructive
 
 possession of the same.
 

 Here, the only evidence of defendant's close proximity to drugs was that he was seen by the police emerging from a house in which drugs were ultimately found burning in an oven. "The most the State has shown is that defendant had been in an area where he could have committed the crimes charged."
 
 State v. Minor
 
 ,
 
 290 N.C. 68
 
 , 74-75,
 
 224 S.E.2d 180
 
 , 185 (1976) (reversing the trial court's denial of the defendant's motion for nonsuit because there was no evidence linking the defendant to the marijuana other than the fact that he had been a visitor to an abandoned house located 100 feet from a marijuana field). Nothing other than mere suspicion provides a connection between the drugs and defendant.
 

 Unlike the birth certificate and identification found in
 
 Miller
 
 , the state-issued driver's license and other documents found in the residence belonged to McEntire, not
 
 defendant
 
 .
 
 See
 

 363 N.C. at 100
 
 ,
 
 678 S.E.2d at 595
 
 . Unlike the cash discovered in
 
 Brown
 
 , here, the $4,000.00 in cash was not discovered on defendant's person, but was discovered in a kitchen drawer. See
 
 310 N.C. at 569
 
 ,
 
 313 S.E.2d at 589
 
 . Unlike the drugs
 
 *681
 
 found within arms'-reach of both defendants in
 
 Miller
 
 and
 
 Brown
 
 , here the marijuana was discovered burning in an oven, and as defendant and McEntire exited the house before the marijuana was discovered, the State has not and cannot show where defendant was-defendant's proximity-in relation to the marijuana in order to establish constructive possession. Thus, the State's only evidence tying defendant to the residence or items discovered therein was his presence on the afternoon of 22 October 2013 and the single photograph of defendant found face down in a plastic storage bin located in a bedroom.
 

 The State argues that this Court should follow the reasoning in
 
 State v. Moore
 
 , in which this Court upheld the convictions of two codefendants for offenses related to the growing of marijuana in a field near their home based on the theory of constructive possession.
 
 79 N.C.App. 666
 
 , 669-71, 675-76,
 
 340 S.E.2d 771
 
 , 773-75, 777 (1986). However,
 
 Moore
 
 is easily distinguishable from and inapplicable to the instant case. For example, in
 
 Moore
 
 , the fingerprints of both the defendants were found on items within the house near the marijuana field; defendant Moore "had in his possession a key that fit the gate and the door to the house[,]" and defendant "Moore's truck was present on the premises and contained twine identical to the twine used to tie the marijuana plants to the stakes and to twine found within the house."
 
 Id.
 
 at 675,
 
 340 S.E.2d at 777-78
 
 .
 

 Here, there was no evidence that linked defendant to the house or the contents therein: (1) no evidence defendant had any possessory interest in the house; (2) no evidence defendant had a key to the residence; (3) no evidence of defendant's fingerprints on any items seized or found in the house; (4) no evidence of any items belonging to defendant (including the photograph of defendant which belonged to McEntire) seized or found in the house; and (5) no evidence of incriminating evidence on defendant's person.
 
 See
 
 id.
 

 Therefore, as in
 
 Minor
 
 , here, there is no evidence linking defendant to the house at Hardin Drive or the marijuana and drug paraphernalia found therein other than the fact that defendant had been a visitor to the house and emerged from the house with the main resident.
 
 See
 

 290 N.C. at 75
 
 ,
 
 224 S.E.2d at 185
 
 .
 

 Furthermore, particularly as regards a defendant's presence and photographs of a defendant at the scene where drugs are discovered, the dissenting opinion in
 
 Miller
 
 offers the following highly instructive example:
 

 In
 
 State v. McLaurin
 
 , the defendant was convicted of possession of drug paraphernalia under a constructive possession theory.
 
 320 N.C. 143
 
 , 144,
 
 357 S.E.2d 636
 
 , 637 (1987). Law enforcement searched the defendant's
 
 *773
 

 *682
 
 residence pursuant to a search warrant and found drug paraphernalia which contained traces of cocaine, throughout the house.
 

 Id.
 

 In a crawl space beneath the dwelling, law enforcement found three marked one hundred dollar bills that were used in a previous drug transaction.
 
 320 N.C. at 145
 
 ,
 
 357 S.E.2d at 637
 
 .
 
 The defendant admitted to living in the residence, and photographs of her were found inside the house along with her Medicaid card
 
 .
 

 Id.
 

 However, the defendant did not have exclusive control over the premises, leading this Court to conclude that "because there was no evidence of other incriminating circumstances linking her to [the seized paraphernalia], her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia."
 
 320 N.C. at 147
 
 ,
 
 357 S.E.2d at 638
 
 .
 

 363 N.C. at 108
 
 ,
 
 678 S.E.2d at 600
 
 (Brady, J., dissenting) (emphasis added).
 

 Unlike in
 
 McLaurin
 
 , in which there was found to be insufficient substantial evidence to support a conclusion of constructive possession, even where "[t]he defendant admitted to living in the residence, and photographs of her were found inside the house along with her Medicaid card[,]"
 
 see
 
 id.
 

 (Brady, J., dissenting), here, there are even fewer "incriminating circumstances." Here, defendant did not live or admit to living in the house at 305 Hardin Road, no identifying documents of his were discovered at the house, and the most incriminating circumstance presented by the State, besides defendant's presence on the day, is a photograph of defendant found face down in a plastic storage bin in one of the bedrooms. This is not substantial evidence because, at most, it "raises no more than a suspicion of guilt[.]"
 
 Id.
 
 at 99,
 
 678 S.E.2d at 594
 
 (citation omitted). In fact, we are unable to find any other case in which a charge was allowed to go to the jury based on such a thin suspicion of guilt and sustain a guilty verdict. As such, defendant's motion to dismiss all possessory-related charges should have been granted.
 

 B.
 
 Maintaining a Dwelling
 

 Defendant next argues the trial court erred in denying his motion to dismiss the charge of maintaining a dwelling. We agree.
 

 (a) It shall be unlawful for any person:
 

 ...
 

 *683
 
 (7) To knowingly keep or maintain any ... dwelling house ... which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article[.]
 

 N.C. Gen. Stat. § 90-108
 
 (a)(7) (2015).
 

 Whether a person "keep[s] or maintain[s]" a dwelling, within the meaning of
 
 N.C. Gen. Stat. § 90-108
 
 (a)(7), requires the consideration of several factors, none of which are dispositive. Those factors include: ownership of the property; occupancy of the property; repairs to the property; payment of taxes; payment of utility expenses; payment of repair expenses; and payment of rent.
 

 State v. Bowens
 
 ,
 
 140 N.C.App. 217
 
 , 221-23,
 
 535 S.E.2d 870
 
 , 873-74 (2000) (internal citations omitted) (concluding the trial court erred in denying the defendant's motion to dismiss the charge of maintaining a dwelling, but affirming the trial court's denial of the defendant's motion to dismiss the charge of possession with intent to sell or deliver marijuana). " General Statute 90-108(a)(7) does not require residence, but permits conviction if a defendant merely keeps or maintains a building for the purpose of keeping or selling controlled substances."
 
 State v. Alston
 
 ,
 
 91 N.C.App. 707
 
 , 711,
 
 373 S.E.2d 306
 
 , 310 (1988).
 

 In
 
 Bowens
 
 , the "[d]efendant was charged with knowingly and intentionally maintaining a dwelling used for keeping or selling controlled substances."
 
 140 N.C.App. at 221
 
 ,
 
 535 S.E.2d at 873
 
 . The defendant argued on appeal that the State failed to present substantial evidence that the defendant "maintained the dwelling" at issue.
 
 Id.
 
 at 222,
 
 535 S.E.2d at 873
 
 . The State's evidence showed that the defendant
 

 was seen in and out of the dwelling 8-to-10 times over the course of 2-to-3 days; nobody else was seen entering the premises
 
 *774
 
 during this 2-to-3 day period of time; men's clothing was found in one closet in the dwelling; [and an officer] testified he believed [the] [d]efendant lived at [the dwelling] ... although he offered no basis for that opinion and had not checked to see who the dwelling was rented to or who paid the utilities and telephone bills.
 

 Id.
 
 at 221-22,
 
 535 S.E.2d at 873
 
 .
 

 In concluding the State's evidence "[did] not constitute substantial evidence" that the defendant maintained the dwelling in question, this
 
 *684
 
 Court noted that "[t]here [was] no evidence [the] [d]efendant was the owner or the lessee of the dwelling, or that he had any responsibility for the payment of the utilities or the general upkeep of the dwelling."
 
 Id.
 
 at 222,
 
 535 S.E.2d at 873
 
 (citations omitted). Further, in reversing the conviction for maintaining a dwelling, this Court noted that "[t]estimony [the] [d]efendant was present at the dwelling on several occasions and testimony he lived [there] [could] not alone support a conclusion [the] [d]efendant kept or maintained the dwelling."
 

 Id.
 

 (footnote omitted).
 

 In the instant case, there is even less evidence than there was in
 
 Bowens
 
 . Here, there is no evidence that defendant was the owner or the lessee of the dwelling at 305 Hardin Road, nor was there evidence that defendant paid for its utilities or upkeep.
 
 See
 
 id.
 

 Further, unlike the evidence presented in
 
 Bowens
 
 , here there was no evidence that defendant had been seen in or around the dwelling before, nor was their evidence that defendant lived there. Accordingly, the trial court erred in denying defendant's motion to dismiss the charge of maintaining a dwelling.
 

 C.
 
 Acting in Concert
 

 Defendant also contends the State failed to present substantial evidence demonstrating he was acting in concert with McEntire in the commission of all of the crimes charged and, as such, the trial court committed plain error by instructing the jury on this theory of guilt. We agree.
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C. R. App. P. 10(a)(4) (2015). The North Carolina Supreme Court "has elected to review unpreserved issues for plain error when they involve ... errors in the judge's instructions to the jury...."
 
 State v. Gregory
 
 ,
 
 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996) (citations omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993) (citation omitted).
 

 "To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose."
 
 State v. Joyner
 
 ,
 
 297 N.C. 349
 
 , 356,
 
 255 S.E.2d 390
 
 , 395 (1979) (citation omitted).
 

 *685
 
 Under the doctrine of acting in concert, the State is not required to prove actual or constructive possession if it can establish that the defendant was "present at the scene of the crime and the evidence is sufficient to show he [was] acting together with another who [did] the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."
 
 Id.
 
 at 357,
 
 255 S.E.2d at 395
 
 . "It is not, therefore, necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle...."
 
 Id.
 
 at 357,
 
 255 S.E.2d at 395
 
 . However, there must be evidence of a common plan or purpose shared by the accused with one other person.
 
 See
 

 State v. Williams
 
 ,
 
 299 N.C. 652
 
 , 656-57,
 
 263 S.E.2d 774
 
 , 777-78 (1980). Where there is "no evidence of joint action other than presence at the scene[,]" such evidence will not be sufficient for the charge to be submitted to the jury.
 
 James
 
 ,
 
 81 N.C.App. at 97
 
 ,
 
 344 S.E.2d at 81
 
 (citations omitted). "Mere presence at the scene of a crime is not itself a crime, absent at least some sharing of criminal intent."
 

 Id.
 

 at 97
 
 ,
 
 344 S.E.2d at 81-82
 
 (citation omitted).
 

 *775
 
 In
 
 James
 
 , the trial court instructed the jury on both constructive possession and acting in concert, and the defendant was convicted of possession with intent to sell and deliver cocaine.
 

 Id.
 

 at 96-97
 
 ,
 
 344 S.E.2d at 81-82
 
 . In finding the evidence was insufficient for the charge to be submitted on both theories, this Court reasoned that, regarding acting in concert, the only evidence connecting the defendant "to the cocaine was that he was found in the kitchen where the refrigerator containing the drugs was located" and he had a gun in his hand, which was not introduced into evidence, and there was no evidence that it was loaded or usable.
 

 Id.
 

 at 96
 
 ,
 
 344 S.E.2d at 81
 
 . This Court held that this evidence "raise[d] no more than a suspicion that [the defendant] was intentionally involved in the possession of the cocaine."
 

 Id.
 

 at 97
 
 ,
 
 344 S.E.2d at 82
 
 .
 

 Here, the State presented no evidence that defendant had a common plan or purpose to possess marijuana or drug paraphernalia with McEntire. At most, the State proved defendant and McEntire were acquainted and defendant was present on 22 October 2013 when the drugs were found. However, "[m]ere presence at the scene of a crime is not itself a crime," and the State presented no evidence that defendant and McEntire shared any "criminal intent."
 

 Id.
 

 at 97
 
 ,
 
 344 S.E.2d at 81-82
 
 (citation omitted).
 

 "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 

 *686
 

 State v. Cameron
 
 ,
 
 284 N.C. 165
 
 , 171,
 
 200 S.E.2d 186
 
 , 191 (1973) (citations omitted). Thus, the trial court erred in instructing the jury on the theory of acting in concert.
 

 In conclusion, having determined that the trial court erred in denying defendant's motions to dismiss, and in giving an instruction on acting in concert, we vacate the judgments of the trial court.
 

 VACATED.
 

 Judges CALABRIA and STEPHENS concur.
 

 [1]
 

 Defendant was also originally indicted on the following additional charges: trafficking in cocaine, possession with intent to sell and deliver cocaine, and maintaining a dwelling house for keeping and selling cocaine. Prior to the start of trial the State took dismissals on all cocaine charges. Nothing in the record suggests on what basis defendant was originally charged with the cocaine-related offenses. Other than the warrants and indictments themselves, there is no evidence in the record that any cocaine was found in the residence at 305 Hardin Road or on defendant's person.