An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-871

Filed 16 July 2025

Randolph County, No. 21 CRS 050668-750

STATE OF NORTH CAROLINA

v.

RODGER LEE DAVIS, Defendant.

Appeal by Defendant from judgment entered 6 March 2024 by Judge Taylor Browne in Randolph County Superior Court. Heard in the Court of Appeals 8 April 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Amanda M. Whitt-Downs, for the State.*

> *Attorney Joseph E. Gerber for the Defendant–Appellant.*

MURRY, Judge.

Rodger L. Davis (Defendant) appeals the trial court's denial of his motion to dismiss at the close of State's evidence and admission of evidence at trial. Defendant argues that the trial court erred (1) by denying his motion to dismiss because the State adduced insufficient evidence to sustain his conviction of possession of a Schedule II controlled substance with intent to manufacture, sell, or deliver; (2) by

allowing the State to present hearsay statements concerning Defendant's residential and relationship statuses; and (3) by allowing the State to convey these hearsay statements in contravention of Defendant's constitutional rights to confront the witnesses against him. For the reasons below, we hold the trial court did not err.

## I.  Background

On 1 March 2021, Randolph County Probation Officer Denzell Spencer was called to Ashley Morgan's mobile home in Thomasville to apprehend Defendant for an outstanding parole warrant. The mobile home was not Defendant's permanent address. As another officer knocked on the front door, Officer Spencer observed an unidentified individual peek out of a curtain from a back window of the home. Officer Spencer notified officers stationed behind the residence of the individual located at the back of the residence. When Morgan answered the front door, Officer Spencer heard a "commotion" and ran to the back of the home, where he found Defendant in police custody. Law enforcement observed three individuals at the scene: Defendant, Morgan, and Morgan's brother, Dalton Shackleford.

After Defendant's arrest, Morgan verbally consented to a search of the residence. During the search, Morgan and Shackleford stayed towards the front of the home. While searching that same back room, Officer Spencer observed two scales and multiple baggies in plain view on top of a dresser. In a set of plastic drawers by that same back window, he also discovered a plastic bag containing a crystal-like substance. Officer Spencer requested assistance from Detective Travis Cox with the

Randolph County Sheriff's Department. Detective Cox identified approximately 6 grams of a crystal-like substance in the bag that closely resembled methamphetamine. Subsequent testing by the State Crime Lab later confirmed this substance was 6.36 grams of methamphetamine. Searching further, Detective Cox also found a small amount of marijuana and a small black box containing one glass smoking device.

The officers arrested Defendant for absconding parole and later charged him with felony possession of methamphetamine with intent to manufacture, sell, or deliver (PWISD) and felony maintaining a dwelling for keeping controlled substances. Between Defendant's arrest and trial, Morgan died from a drug overdose. This matter came for trial on 5 March 2024, at which the State called three witnesses, including Officer Spencer and Detective Cox.

Among other colloquies, the State engaged in certain lines of questioning to which Defendant objected:

> [STATE]: Were you aware if anybody else was living there?
> [DEFENSE COUNSEL]: Objection.
> THE COURT: All right, . . . approach[ ] the bench.[ ]
> THE COURT: Objection sustained.
> [STATE]: Okay. When you received that information [about a probation/parole call to the home], did they indicate to you who was living at that residence?
> [DEFENSE COUNSEL]: Objection. Objection, we've been through this, Your Honor.

Defendant also objected to questioning related to Defendant's past dating

relationships:

> [STATE]: And at the point that entry is made into the house, are you aware of the relationship between [Morgan] and [Defendant]?
>
> [SPENCER]: They were—
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: Overruled, if he knows.
>
> . . . .
>
> [SPENCER]: They were dating.
>
> . . . .
>
> [STATE]: Did you know—at any point were you familiar with the relationship between [Defendant] and [Morgan]?
>
> [DEFENSE COUNSEL]: Objection[,] foundation.
>
> THE COURT: Overruled.
>
> . . . .
>
> [COX]: It was my understanding that they were dating.

Defendant did not present evidence or testify in his own defense. At the close of the State's evidence, he instead moved to dismiss both charges for insufficient evidence. The trial court granted the motion to dismiss the felony-maintaining charge and submitted the PWISD charge to the jury, which found him guilty only for the lesser-included charge of possession of methamphetamine. . The trial court sentenced Defendant to 9–21 months in the North Carolina Department of Adult Corrections, suspended for 24 months of supervised probation. Defendant gave oral notice of appeal.

## II.    Jurisdiction

Defendant appeals as a matter of right from the final judgment of the trial court under N.C.G.S. §§ 7A-27 and 15A-1444. N.C.G.S. § 7A-27(b)(1) (pled not guilty but found guilty); *id.* § 15A-1444(a) (same).

## III. Analysis

## A. Motion to Dismiss

First, Defendant argues that the trial court erred in denying his motion to dismiss the PWISD charge for insufficient evidence because the State failed to present "substantial evidence that [Defendant] possessed the drugs." We review Defendant's motion to dismiss *de novo* by "consider[ing] the matter anew and freely substitut[ing] [our] own judgment for that of the trial court." *State v. Battle*, 253 N.C. App. 141, 143 (2017) (quotation omitted) (reviewing the denial of motion to dismiss *de novo*). For the following reasons, we affirm the trial court.

Under the North Carolina Controlled Substances Act, it is unlawful for any person to "possess with intent to manufacture, sell[,] or deliver, a controlled substance," N.C.G.S. § 90-95(a)(1) (2023), including methamphetamine,[1] *id.* § 90-90(3)(c). The question of whether the evidence withstands a motion to dismiss "is a fact-specific inquiry in which the totality of the circumstances . . . must be considered unless the quantity of drugs found is so substantial that this factor—by

---

[1] To prove that Defendant committed PWISD, the State must present evidence of his (1) possession (2) of a controlled substance (3) with intent to sell or deliver the controlled substance. *See State v. Blagg*, 377 N.C. 482, 489 (2021). The only element at issue on appeal is the first: whether he possessed the methamphetamine.

itself—supports an inference of possession with intent to sell or deliver." *State v. Blagg*, 377 N.C. 482, 489–90 (2021) (quotation omitted). In ruling on a motion to dismiss, a trial court must determine whether the State adduced "substantial evidence (1) of each essential element of the offense charged[ ] and (2) that the defendant . . . perpetrat[ed] . . . the offense." *State v. Smith*, 186 N.C. App. 57, 62 (2007). "[S]ubstantial evidence" is any "relevant evidence . . . adequate to support a conclusion," *State v. Franklin*, 327 N.C. 162, 171 (1990), that "need only . . . satisfy a reasonable mind" to withstand our appellate scrutiny, *State v. Butler*, 356 N.C. 141, 145 (2002). Evidence that "tend[s] to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction . . . is for the jury" to decide "beyond a reasonable doubt." *Franklin*, 327 N.C. at 171–72.

To determine whether there is substantial evidence, the trial court must view all evidence "in the light most favorable to the State," give it the benefit of "every reasonable inference," and resolve "[a]ny contradictions . . . in [its] favor." *State v. Dover*, 381 N.C. 535, 547 (2022) (first alteration in original) (first quoting *Blagg*, 377 N.C. at 487; and then quoting *State v. Miller* (*Miller I*), 363 N.C. 96, 98 (2009)). This analysis "is the same whether the State's evidence is direct[ ] [or] circumstantial." *State v. Powell*, 299 N.C. 95, 99 (1980); *see Blagg*, 377 N.C. at 488–89. ("[I]f the record . . . contains substantial evidence, whether direct or circumstantial, . . . to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied."

(quotation omitted)). Circumstantial evidence "is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant," *State v. Adcock*, 310 N.C. 1, 36 (1984) (quoting 1 Edward J. Devitt & Charles B. Blackmar, *Federal Jury Practice and Instructions* § 15.02 (3d ed. 1977)), that may "support a conviction even when the evidence does not rule out every hypothesis of [his] innocence." *State v. Stone*, 323 N.C. 447, 452 (1988). *See Butler*, 356 N.C. at 145 ("To be substantial, . . . need only be such as would satisfy a reasonable mind as being adequate to support a conclusion." (quotation omitted)). Courts must "distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla" that may "only raises a suspicion or possibility of the fact in issue"—here, Defendant's constructive possession. *Battle*, 253 N.C. App. at 144 (quotation omitted). "[M]ore than a scintilla" and "substantial evidence" synonymously "mean that the evidence must be existing and real, not just seeming or imaginary." *State v. Earnhardt*, 307 N.C. 62, 66 (1982) (citing *Powell*, 299 N.C. at 99). Evidence that demonstrates "only a *suspicion* of possession" cannot withstand a motion to dismiss. *State v. Acolsatse*, 158 N.C. App. 485, 486 (2003) (emphasis added).

A person constructively possesses a substance when he "lacks actual physical possession," *id.* at 488 (quotation omitted), but retains "both the power and intent to control its disposition or use," *State v. Harvey*, 281 N.C. 1, 12 (1972). An illicit substance "found . . . under the control of an accused" implies "knowledge and possession which may . . . carry the case to the jury on a charge of unlawful

possession." *Id.*

Nevertheless, "unless the person has *exclusive* possession" of the narcotics' location, "the State must show other incriminating circumstances" to imply constructive possession. *State v. Davis*, 325 N.C. 693, 697 (1989) (emphasis added). Relevant incriminating circumstances include "proximity to the contraband," "indicia of . . . control over the place where the contraband is found," or "suspicious behavior at or near the time of the contraband's discovery." *State v. Chekanow*, 370 N.C. 488, 496 (2018) (citing *Miller I*, 363 N.C. at 99–100). While "[n]o single factor controls" the totality-of-the-circumstances analysis that is "ordinarily . . . for the jury," *State v. James*, 81 N.C. App 91, 93 (1986), our appellate courts have laid down certain guideposts to determine whether evidence suggests circumstantially constructive possession. *See, e.g.*, *State v. Weems*, 31 N.C. App. 569, 571 (1976) ("close juxtaposition to a narcotic drug"); *Miller I*, 363 N.C. at 99 ("power to control either alone or jointly with others"); *State v. Turner,* 168 N.C. App. 152, 156 (2005) ("conduct indicating awareness of the drugs, such as efforts at concealment or behavior suggesting fear of discovery").

In the case *sub judice*, Defendant argues that "there were *zero* incriminating circumstances connecting the drugs found in [Morgan's] house to [Defendant] beyond (1) [Defendant's] mere presence and (2) police testimony, parroting [Morgan's] unattributed hearsay, that she and [Defendant] were dating." At the outset, Defendant invokes *State v. Holloway*, 250 N.C. App. 674 (2016), in which this Court

reversed a trial court's denial of a defendant's motion to dismiss because "no evidence link[ed] defendant to the house . . . or the [drugs] and drug paraphernalia found therein other than" his visitation to and emergence from "the house with the main resident." *Id.* at 681.

Unlike in *Holloway*, however, substantial evidence links Defendant to Morgan's home. In *Holloway*, police arrived at the residence after receiving a report about a breaking-and-entering. *Id.* at 675–76. Here, police arrived at Morgan's residence in search of Defendant because he was absconding parole. In *Holloway*, police found drugs inside the oven in the kitchen while the defendant and another occupant were found in a different part of the home. *Id.* Here, however, officers observed an individual moving around in a back room of Morgan's residence, apprehended Defendant towards the back of the home, and found methamphetamine in a clear drawer and plain-view paraphernalia in that back room. Meanwhile, officers found Morgan and Shackleford, the only two known occupants of Morgan's home, at the front of the residence. We hold that the incriminating circumstances here are more substantial than those in *Holloway*.

The State elicited testimony from Officer Spencer explaining the details of Defendant's arrest. Upon arriving at Morgan's house, he observed and alerted officers to an unidentified individual peeking from a back-room window. Shortly after, officers arrested Defendant near that back room and searched the premises, only to find methamphetamine and drug paraphernalia in plain-view near its window. Viewing

this evidence in the light most favorable to the State, a reasonable juror could infer that, because Morgan and Shackleford were located towards the front of the home and Defendant was arrested towards the back of the home, it could only have been Defendant peeking out of the back-room window directly over the contraband. Further, a reasonable juror could infer that Defendant was hiding in the back room and peeking out of the window with plans to evade his probation officer because he knew of the methamphetamine and probation abscondence. Defendant's proximity to the contraband circumstantially incriminates him to a degree that "would satisfy a reasonable" juror, *Butler*, 356 N.C. at 145, and gives rise to the "fairly logical and legitimate deduction," *Franklin*, 327 N.C. at 172, that he at least "knew of [the methamphetamine's] presence," *State v. Robledo*, 193 N.C. App. 521, 527 (2008) (quoting *Weems*, 31 N.C. App. at 571).

Because this evidence establishes that Defendant was the only individual in the back room with the contraband, it shows Defendant's opportunity to exercise "indicia of . . . control" over the methamphetamine despite the nearby presence of third parties. *See, e.g.*, *Miller I*, 363 N.C. at 100 (finding sufficient evidence where defendant previously sat on the bed under which officers found cocaine far removed from other individuals). This evidence allows for the "fairly logical and legitimate deduction," *Franklin*, 327 N.C. at 171–72, that Defendant exercised control over the contraband. *See State v. Brown*, 64 N.C. App. 637, 641 (1983) (finding sufficient evidence where defendant did not live at the apartment searched, but was present

with two others when officers found narcotics on a table only six to eight inches from where he had been standing, "hold[ing] that the defendant, standing in close proximity to the table and being the only person in the room," was "capab[le] of exercising control over the cocaine.), *aff'd*, 310 N.C. 563, 570 (1985).

The State also offered evidence of Defendant's contextually suspicious behavior. Viewing this evidence in the light most favorable to the State, a reasonable juror could infer that Defendant attempted to flee through the residence's back door after keeping watch through the window once he saw police out front. *See Butler*, 356 N.C. at 145. This evidence could "indicat[e] an awareness of the drugs" or "fear of discovery," *Turner*, 168 N.C. App. at 156, and thus give rise to the "fairly logical and legitimate deduction," *Franklin*, 327 N.C. at 171, of Defendant's constructive possession. *See State v. Harrison*, 93 N.C. App. 496 (1989) (inferring constructive possession from the defendant's flight from area where illegal drugs were found). Here, the State presented sufficient evidence of Defendant's constructive possession, and we leave the question of Defendant's guilt "beyond a reasonable doubt" to the jury. *Franklin*, 327 N.C. at 172. Therefore, the trial court did not err in denying Defendant's motion to dismiss for insufficient evidence.

**B. Hearsay Evidence**

Second, Defendant argues that the trial court erred by "allowing the State to convey to the jury over defense objections the decedent [Morgan's] hearsay" statements that (1) Defendant lived at Morgan's residence and (2) she and Defendant

were dating. For the following reasons, we disagree and affirm the trial court.

A trial court generally cannot admit as hearsay "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c). Nevertheless, an out-of-court statement may be admissible "for a purpose other than to prove the truth of the matter asserted." *State v. Roberts*, 268 N.C. App. 272, 276 (1985). When preserved by an objection, we review *de novo* the trial court's "admission of evidence alleged to be hearsay." *State v. Harris*, 253 N.C. App. 322, 327 (2017); *see State v. Wilson*, 197 N.C. App. 154, 159 (2009) ("We review *de novo* the trial court's determination of whether an out-of-court statement is admissible pursuant to" Rule 803.).

### 1. *Defendant's Residence*

We first address Morgan's allegedly inadmissible statements about Defendant living with her; however, the trial transcript indicates that the State presented no such evidence. A question "in which counsel assumes or insinuates a fact not in evidence, and which receives a negative answer, is not evidence of any kind." *State v. Smith*, 289 N.C. 143, 157 (1976). Put more plainly, "questions asked by an attorney are not evidence." *Kyle v. Holston Grp.*, 188 N.C. App. 686, 693 n.1 (1996). Here, the State twice inquired about the individuals living at Morgan's residence and the trial court sustained Defendant's objections both times, preventing the witness from answering. Because the State was unable to offer evidence regarding Defendant's

residence, Defendant's argument that the trial court erroneously admitted those two colloquies is without merit.

## 2. *Defendant's Relationship with Morgan*

We next address the trial court's admission of Morgan's statements concerning her relationship with Defendant. On appeal, Defendant contends these statements were inadmissible hearsay under Rule 801 of the North Carolina Rules of Evidence. However, Defendant did not object on hearsay grounds at trial, but to lack of foundation. Therefore, this issue is not preserved for appellate review. *See State v. Gettleman*, 275 N.C. App. 260, 272 (2020) ("Where a defendant objects to the admission of evidence before the trial court and states a specific ground as the basis for that objection, but raises a different ground as the basis for his argument on appeal, the issue is not preserved."). To preserve an issue for appellate review, a defendant must "object stating the specific grounds for the ruling the party desired the court to make if . . . not apparent from the context," and obtain a ruling on those grounds. *State v. Rainey*, 198 N.C. App. 427, 433–34 (2009) (emphasis omitted) (quoting N.C. R. App. P. 10(a)(1)). On appeal, a defendant must first show that "he provided the judge with a timely and specifically defined opportunity to rule correctly" before claiming that such ruling was in error. *Adcock*, 310 N.C. at 18 (quoting 1 Brandis, *N.C. Evidence* § 27 (2d rev. ed. 1982)). When a defendant fails to object, we may review for plain error but only if the defendant specifically alleges it on appeal.

Because Defendant did not request plain error review, we do not address this unpreserved issue.

## C. Confrontation of Morgan

Third, Defendant argues that the trial court erred by allowing the State to admit Morgan's above hearsay statements "in contravention [of] his constitutional rights to confront his accuser" because Morgan passed away before he could confront her at trial. We disagree here as well.

Initially, we note that Defendant did not raise a constitutional objection at trial. *See State v. Valentine*, 357 N.C. 512, 525 (2003) ("The failure to raise a constitutional issue before the trial court bars appellate review." (citing N.C. R. App. P. 10(b)(1))); *see also State v. Smith*, 352 N.C. 531, 557 (2000) (holding that "defendant waived his right to appellate review of this issue because he failed to raise it as constitutional error before the court and to allege the same in his assignments of error."). However, our courts have permitted appellate review of alleged Confrontation Clause violations under a plain error analysis, despite a defendant's failure to raise them at trial. *E.g., State v. Lemons,* 352 N.C. 87, 96 (2000). Under plain error review, (1) this Court must determine the trial court erred and (2) the defendant must demonstrate the trial court's error "had a probable impact on the jury's finding that the defendant was guilty and seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *State v. Miller* (*Miller II*), 371 N.C. 266, 268 (2018) (alteration in original) (quotation omitted).

Both the federal and state Confrontation Clauses protect a criminal defendant's "right to be confronted with the witnesses against him" at trial. U.S. Const. amend. VI; *see* N.C. Const. art. I § 23 ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). This right applies to testimonial statements that may "establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). When testimonial statements are at issue, actual witness confrontation is "the only indicium of reliability sufficient to satisfy constitutional demands." *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004). But statements that serve only "an information-gathering purpose" are non-testimonial and thus not subject to the Confrontation Clauses. *State v. Miller* (*Miller III*), 371 N.C. 273, 283–84 (2018).

Neither of Defendant's hearsay claims implicate the Confrontation Clauses. First, Morgan's statement regarding Defendant's residence was not admitted evidence for the reasons discussed above. This contention similarly lacks merit. Second, there is no evidence that Morgan either spoke to law enforcement about her relationship with Defendant or was the only individual who could have given this information. In fact, there is no evidence of any statement to law enforcement regarding Morgan and Defendant's relationship whatsoever. At trial, officers did not testify as to how they became aware of Morgan and Defendant's relationship; however, Officer Spencer did testify to being notified that Defendant could be at Morgan's residence due to Defendant's absconding parole. This latter contention also

fails on appeal. Therefore, the trial court did not violate Defendant's constitutional rights by allowing testimony about Defendant and Morgan's relationship.

## IV.    Conclusion

For the reasons above, this Court holds the trial court did not err (1) by holding that the State adduced sufficient evidence to prove each element of possession of a Schedule II controlled substance and that Defendant was the perpetrator of the offense and (2) by allowing testimony regarding Morgan and Defendant's relationship.

NO ERROR.

Judge STADING concurs.

Judge STROUD concurs in the result only.

Report per Rule 30(e).